## COMMONWEALTH vs. LUCILLE P. REID.

Middlesex.  April 8, 1981. — August 5, 1981.

Present: HENNESSEY, C.J., BRAUCHER, LIACOS, ABRAMS, & NOLAN, JJ.

*Jury and Jurors.  Constitutional Law*, Jury.  *Practice, Criminal,* Challenge
of jurors, Instructions to jury.  *Homicide.  Evidence,* Spontaneous
utterance, Prior consistent statement, Recross-examination, Relevancy
and materiality.

At the trial of a female defendant charged with the murder of a male, the
judge was warranted in finding that the defendant was improperly ex-
ercising her peremptory challenges to exclude males from the jury
where she attempted to use her challenges to strike all six of the males
on the panel and none of the eight females and refused to give any ex-
planation for the challenges when requested to do so by the judge.
[251-254]

Where a female defendant charged with the murder of a male had im-
properly attempted to exercise her peremptory challenges to exclude
males from the jury, it was within the judge's authority to disallow the
challenges rather than to dismiss the entire venire and order a new
venire drawn.  [255-256]

At a murder trial, there was sufficient evidence negating the defendant's
claim that she had a right to use deadly force against the victim to war-
rant denial of her motion for a required finding of not guilty of murder
in the second degree.  [256-257]

At a murder trial in which the jury requested additional instructions on
the elements of the various crimes on which they had been charged,
the judge did not err in refusing to reinstruct the jury on reasonable
doubt, the burden of proof, or the presumption of innocence, nor was
there any error in the additional instructions concerning self-defense.
[257-258]

The judge at a murder trial did not abuse his discretion in excluding a wit-
ness's testimony as to a statement claimed to be a spontaneous ex-
clamation, made by the defendant after she had stabbed the victim
where the record indicated that the defendant had called her mother
and the police before making the statement and that there was a con-
siderable time lag between the stabbing and the conversation with the
witness.  [258-259]

At a murder trial, a statement made by the defendant after she had
stabbed the victim was not admissible as a prior consistent statement
where the defendant had been impeached solely by the contradictory
testimony of other witnesses. [259-260]

At a murder trial at which the defendant claimed to have stabbed the vic-
tim in self-defense after he choked her, the judge did not abuse his
discretion in excluding the defendant's hospital records for treatment
of asthma where the fact that the defendant suffered from asthma was
collateral to her claim that she was choked by the victim and where
the defendant had been allowed to testify respecting her asthma.
[260]

The judge at a murder trial did not abuse his discretion in admitting in ev-
idence an autopsy photograph of the victim and the victim's blood-
stained clothing where the evidence was relevant to the manner in
which the victim died and the defendant's claim of self-defense.
[260-261]

INDICTMENT found and returned in the Superior Court
Department on April 6, 1979.

The case was tried before *Sullivan*, J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court ordered direct appellate review on its
own initiative.

*Joyce Wheeler Poulin* for the defendant.

*Robert L. Rossi*, Assistant District Attorney, for the Com-
monwealth.

ABRAMS, J.   The defendant Lucille P. Reid was indicted
for murder in the first degree in the stabbing death of Dan-
ny Harris.   After a jury trial, Reid was convicted of murder in
the second degree, and she appeals.   We transferred the case
to this court on our own motion.[1]   At trial, Reid admitted kill-
ing the victim but claimed that she had acted in self-defense.
On appeal she claims error concerning (1) the application of
*Commonwealth* v. *Soares*, 377 Mass. 461, cert. denied, 444
U.S. 881 (1979), to peremptory challenges made by criminal

---

[1] Where, as here, the offense, resulting in a second degree murder convic-
tion upon an indictment charging murder in the first degree, was committed
before July 1, 1979, extraordinary review under G. L. c. 278, § 33E, re-
mains available. *Commonwealth* v. *Davis*, 380 Mass. 1, 16-17 (1980).

defendants; (2) the denial of her motion for a required find-
ing of not guilty; (3) the supplemental instructions to the
jury; and (4) numerous evidentiary rulings. We affirm,
and after our review of the case on both the law and the evi-
dence, we conclude that we should not exercise our power
under § 33E in favor of the defendant.

We summarize the facts. At approximately 6:05 P.M. on
March 14, 1979, Reid stabbed Danny Harris during an ar-
gument in Frances Lynn Tyree's apartment. The Tyree
apartment was located across the hall from Harris's apart-
ment, where he lived with Donna Nally and their three year
old son, Danny, Jr. Reid lived nearby in the same apart-
ment complex.

The argument was precipitated by an incident that oc-
curred moments earlier involving Reid and Danny, Jr.
Reid and her three year old son were visiting Tyree and her
two children. Danny, Jr. had also gone over to the Tyree
apartment. Sometime between 5:30 P.M. and 6 P.M., Dan-
ny, Jr., bit Reid's son on the cheek. Reid grabbed the Har-
ris boy's hand and told her son to bite it. When he refused,
Reid bit Danny, Jr.'s hand to teach him a lesson.

Thereafter, the boy returned to the Harris apartment.
He was upset and crying, and told his father that the "big
girl" had bitten him. After calming the boy, Harris accom-
panied him across the hall and knocked on the door of the
Tyree apartment. Tyree's eleven year old son Michael let
Harris and his son in. Donna Nally, who had followed
them across the hall, also entered the apartment. Once in-
side the apartment, Harris asked what happened. Reid,
who was in the kitchen, responded that she had bitten the
child; whereupon Harris entered the kitchen from the living
room and the argument ensued.

Tyree, her son Michael, and Nally all testified at trial.
Tyree saw Harris point his finger at Reid during the argu-
ment. No one saw Harris touch Reid except for Michael,
who testified that Harris "poked" Reid in the shoulder.
During this initial exchange, Harris also called Reid a
"bitch." At some point during the argument in the kitchen

Tyree intervened when she saw Reid's hand move toward the kitchen drawer near the sink. Tyree moved between them and said, in substance, that there would be no fighting in her house. After Tyree stepped away, Reid grabbed a knife from the sink and stabbed Harris in the chest area. No one saw Harris choke Reid, saw any other physical contact between the two,[2] or heard Harris utter any threats against Reid.

Thereafter, Harris walked back to his apartment, supported by Tyree. When they entered, Nally was already inside and had called the police. Shortly thereafter, at approximately 6:20 P.M., police and medical technicians arrived at the Harris apartment. After he received emergency care, Harris was transported to a hospital where he died later that evening from a single stab wound to the heart.

After searching unsuccessfully for Reid at both her own apartment and Tyree's apartment, the police received information concerning Reid's whereabouts. At approximately 8:30 P.M. that evening, the police entered another apartment at the housing complex and found Reid in the bathroom, standing behind the shower curtains.

Both in a statement given to the police after she was arrested[3] and at trial, Reid claimed that she stabbed Harris in self-defense. According to Reid, Harris entered the Tyree apartment yelling and called her a "bitch." He then entered the kitchen, approached Reid, and began pointing his finger at her. She told him not to touch her. Reid said that Harris threatened to kill her and he began choking her. Reid, who testified that she had an asthmatic condition, then punched Harris, kneed him in the groin, and pushed him away. Tyree tried to intervene, but Harris again grabbed Reid by the throat and began choking her. According to Reid, she could barely breathe, and at that event she grabbed the knife from the sink and stabbed Harris.

---

[2] Reid conceded this point at oral argument.

[3] This statement was introduced by the Commonwealth through the interrogating officer.

1. *The misuse of peremptory challenges by Reid.* At the jury empanelment, fifty-three prospective jurors[4] were found to be indifferent and were available to serve on the fourteen-member jury panel. Thereafter, fourteen persons were randomly selected and seated as jurors, subject to the exercise of peremptory challenges by the parties.[5] The Commonwealth exercised its first five peremptory challenges to strike five females from the panel.[6] Five more jurors were then selected. After the Commonwealth declared itself content with the reconstituted panel, Reid used peremptory challenges to strike all six males on the panel. At a bench conference, the prosecutor requested the judge to require the defendant to justify her challenges on the ground that they had been used to exclude all the males from the jury.[7] In accordance with *Commonwealth* v. *Soares, supra* at 491, and on the basis of the evidence before him, the judge found "that the peremptory challenges have been exercised so as to exclude individuals on account of their group affiliations," and asked defense counsel to explain the challenges. No explanation was given, and the

---

[4] The judge excused thirteen of the sixty-six persons in the venire for cause. Of the fifty-three remaining prospective jurors, twenty-three were males.

[5] On the original fourteen-member panel there were eight females and six males. Both the defendant and the prosecution were entitled to fourteen peremptory challenges. Mass. R. Crim. P. 20, 378 Mass. 889 (1979). The judge followed the procedure set forth in Rule 6 of the Superior Court (1974). We add that the discussions concerning the defendant's exercise of her peremptory challenges took place at bench conferences. Thus we are not faced with a claim that the jurors who were seated over the defendant's objections might be biased by the fact that they knew the defendant had attempted to strike them from the petit jury.

[6] Reid did not raise any question concerning the Commonwealth's use of its challenges.

[7] Claiming that the judge raised the issue sua sponte, Reid seems to suggest that he acted improperly in so doing. The record is unclear as to exactly how the *Soares* issue was raised; however, the judge could properly act on his own motion. The record is clear that counsel and the judge were well aware of the application of *Soares* to this case prior to the judge's ruling.

judge disallowed the challenges.[8]   The remaining venire
was dismissed, without objection, after the defendant ex-
pressed no further use for the venire.[9]

Reid claims that her right to use peremptory challenges is
not subject to judicial control;[10] and, in the alternative, that
the judge acted prematurely on the evidence before him in
determining that she was exercising her peremptory chal-

---

[8] At that protracted bench conference, defense counsel refused on three
separate occasions to explain any of the challenges.

[9] The judge stayed the proceedings to allow Reid to file a petition for re-
lief, pursuant to G. L. c. 211, § 3.  After hearing, a single justice of this
court denied relief.  The defendant did not file a claim of appeal from this
order.

The following day, before the jury was sworn, Reid moved that she be
permitted to exercise challenges against three of the male jurors.  In deny-
ing the motion, the judge noted that before the venire was dismissed, the
defendant had been given the opportunity to take any other action with
respect to the jury selection process.  On appeal, Reid does not contest the
validity of this ruling.

However, to the extent that Reid claims she was prevented from using
any of her peremptory challenges, the record reveals the following.  After
the judge disallowed Reid's six challenges, Reid took the position that she
was precluded from challenging those jurors that she had already passed
on.  However, the judge made no ruling on the matter, and Reid neither
attempted to challenge those jurors nor did she request the judge to allow
her to do so.  Therefore, we decline to consider the question whether,
under these circumstances, a defendant should be allowed to rechallenge
the panel.  See Mass. R. Crim. P. 20 (c), 378 Mass. 890 (1979); Rule 6 of
the Superior Court (1974).

[10] At trial the defendant objected to the disallowance of the challenges,
based on the Sixth and Fourteenth Amendments to the United States Con-
stitution, and art. 12 of the Declaration of Rights of the Massachusetts
Constitution.  Reid claimed that she had both a constitutional and a stat-
utory right to use her peremptory challenges for whatever reason she saw
fit without explanation.  (The defendant was apparently relying on G. L.
c. 234, § 29, which governed peremptory challenges in criminal cases
prior to July 1, 1979.  At the time of her trial, peremptory challenges
were governed by Mass. R. Crim. P. 20 [c].)  At trial Reid also asserted
the attorney-client privilege as a reason for her refusal to explain the use of
her peremptory challenges to strike the only male members of the jury
panel.  Since this claim has been neither argued nor briefed, it is deemed
waived.  "An 'appellate court need not pass upon questions or issues not
argued in the brief.'"  *Commonwealth* v. *Cundriff*, 382 Mass. 137, 150
n.22 (1980), quoting from Mass. R. A. P. 16 (a) (4), as amended, 367
Mass. 919 (1975).  *Commonwealth* v. *Pisa*, 372 Mass. 590, 591 (1977).

lenges systematically to exclude males from the jury. In addition, Reid claims that if the judge acted properly, the exclusive remedy is to dismiss the jurors who had been seated and quash the remaining venire.[11] See *Soares, supra* at 491. There is no error.

We do not disagree with Reid's claim that peremptory challenges play an important role in the administration of justice. "The right to exercise peremptory challenges . . . has been called 'one of the most important of the rights secured to the accused,' *Swain* v. *Alabama*, 380 U.S. 202, 219 (1965), quoting *Pointer* v. *United States*, 151 U.S. 396, 408 (1894)." *Commonwealth* v. *Allen*, 379 Mass. 564, 576 (1980). However, in *Commonwealth* v. *Soares*, 377 Mass. 461 (1979), we prohibited litigants from using peremptory challenges to eliminate potential jurors "solely because of their membership in discrete groups." *Commonwealth* v. *Allen, supra.*[12]

In *Soares*, we determined that the Commonwealth is entitled to a representative jury, and that the Commonwealth as well as the defense could challenge the improper exercise of peremptory challenges. *Soares, supra* at 489 n.35. Reid claims that this limitation on her use of peremptory challenges contravenes her right to be tried by a fair and impartial jury in violation of both the Federal and State Constitutions. She asks this court to find both a Federal and State constitutional right to the unfettered use of peremptory challenges by a defendant. However, "[t]here is nothing in the Constitution of the United States which requires the

---

[11] After the jurors were sworn, Reid unsuccessfully moved for a mistrial. For reasons that will be discussed *infra*, the judge acted within his discretion in disallowing the challenges rather than beginning the jury selection anew.

[12] We stated in *Soares*, "The groups of which we speak are defined in art. 1 of the Declaration of Rights of the Constitution of the Commonwealth, as amended by art. 106." *Commonwealth* v. *Soares*, 377 Mass. 461, 486 n.29, cert. denied, 444 U.S. 881 (1979). Article 1 of the Declaration of Rights, as amended by art. 106, adopted in 1976, states in pertinent part: "Equality under the law shall not be denied or abridged because of sex, race, color, creed or national origin."

Congress to grant peremptory challenges . . . ." *Stilson* v. *United States*, 250 U.S. 583, 586 (1919). *Swain* v. *Alabama*, 380 U.S. 202, 219 (1965). *United States* v. *Vargas*, 606 F.2d 341, 346 (1st Cir. 1979). The same principle applies to the State constitutional claim. Cf. *Commonwealth* v. *Soares*, *supra* at 488. "The right is in the nature of a statutory privilege, variable in the number of challenges allowed, which may be withheld altogether without impairing the constitutional guarantees of 'an impartial jury' and a fair trial." *Frazier* v. *United States*, 335 U.S. 497, 505 n.11 (1948), quoting from *Stilson* v. *United States, supra.*

In *Soares*, we also said that there is a "presumption of proper use of peremptory challenges. That presumption is rebuttable, however, by either party on a showing that (1) a pattern of conduct has developed whereby several prospective jurors who have been challenged peremptorily are members of a discrete group, and (2) there is a likelihood they are being excluded from the jury solely by reason of their group membership." *Soares, supra* at 489-490.

The critical inquiry is whether the evidence before the judge was sufficient to overcome the presumption of proper use of peremptory challenges. As we read the record, the evidence before the judge supports his conclusion that Reid was improperly exercising her peremptory challenges to exclude men from the petit jury. The defendant attempted to strike all the males, and no females, from the panel.[13] Faced with this pattern of conduct, the judge, at the suggestion of the Commonwealth, called on the defendant to give reasons for the challenges. When the defendant refused to give any explanation, the judge ruled that the challenges had been used in violation of the principles of *Soares*.[14]

---

[13] The record also discloses that the victim and the six challenged jurors were male and that the defendant and the eight unchallenged jurors were female. See *Soares, supra* at 490 ("Common group membership of the victim [of the defendant] and the majority of remaining jurors is likewise a significant factor").

[14] Reid claims that since seventeen males remained in the venire, it was impossible for her to exclude every male from the jury. However, "[o]ne

After the judge ruled that he would disallow the defendant's challenges, the Commonwealth moved to dismiss the jurors already selected, quash the remaining venire, and order a new venire drawn. *Soares, supra* at 491. See *People* v. *Wheeler*, 22 Cal.3d 258, 282 (1978). The judge denied the motion, and ruled that the appropriate remedy, in these circumstances, was to disallow the challenges. On appeal, Reid asserts that the relief granted was beyond the judge's authority.[15] We disagree.

If a party embarks on a deliberate pattern of conduct in an effort to evade *Soares,* the judge has the authority to fashion relief without declaring a mistrial. In *Soares,* we suggested that where no blacks remained on the venire, dismissal was an appropriate remedy. We did not hold that dismissal of the entire venire was the only appropriate relief. Such a limitation on the trial judge's ability to respond in these circumstances would place in the hands of litigants the unchecked power to have a mistrial declared based on their own misconduct. It would be a reproach to the administration of justice were we to sanction such a result. See *Commonwealth* v. *Lewis,* 346 Mass. 373, 379 (1963).

Moreover, "[i]t is not the legitimate function of the courts of last resort to provide complete and detailed plans and specifications in anticipation of all possible problems and situations. The experienced trial judge can usually cope with them as they arise." *Commonwealth* v. *A Juvenile,* 365 Mass. 421, 435 (1974). We believe it wise to leave the implementation of *Soares* to the "resourcefulness and the in-

need not eliminate 100% of [the group] to achieve an impermissible purpose." *Soares, supra* at 488 n.32. Peremptory challenges may not be systematically exercised with a view toward excluding a discrete group from the petit jury.

[15] Reid did not join in the Commonwealth's motion to dismiss the jury and quash the venire, nor did she object to the denial of the motion. After the jury was sworn, however, she unsuccessfully moved for a mistrial. She did not specifically rely on the question of the appropriateness of the relief granted to the Commonwealth in support of her motion. Nevertheless, it appears the motion was directed in part at the judge's decision to disallow the challenges.

genuity of experienced trial judges." *Commonwealth* v. *A Juvenile, supra.*

In sum, we do not believe that prohibiting the use of peremptory challenges by either party "to exclude members of discrete groups solely on the basis of bias presumed to derive from that individual's membership in the group" (*Soares, supra* at 488), undermines the effectiveness of peremptory challenges. Parties retain wide discretion to exercise peremptory challenges so long as the basis for the challenge does not relate solely to membership in any particular discrete group. See *Soares, supra* at 485 n.28.

2. *Motion for a required finding of not guilty.* After the Commonwealth rested, and again at the close of all the evidence, Reid unsuccessfully moved for directed verdicts[16] of acquittal in so far as the indictment charged murder in the first and second degrees.[17]

Reid, in her brief, does not seriously contend that the evidence introduced up to the time the Commonwealth rested its case, see *Commonwealth* v. *Kelley,* 370 Mass. 147, 150 (1976), was inadequate to support her conviction for murder in the second degree. Rather, relying on her own version of the events leading up to the stabbing, Reid argues that the evidence supported only a verdict of manslaughter. However, the jurors are not limited to Reid's testimony in

---

[16] Under present Massachusetts practice, a motion testing the sufficiency of the evidence is more properly labeled a "motion for required finding of not guilty." Mass. R. Crim. P. 25, 378 Mass. 896 (1979).

[17] Reid's motions were also directed at the lesser included offense of manslaughter. On appeal, she concedes the sufficiency of the evidence on the manslaughter charge. "The defendant also contends that there was no evidence to warrant the judge in submitting the issue of murder in the first degree to the jury. Since the defendant was acquitted of murder in the first degree, [she] must demonstrate prejudice on the record in order to urge such a contention. The record here does not disclose any prejudice to the defendant from the submission of the first degree issues to the jury. Moreover, our review of the entire record under § 33E leads us to conclude that, in any event, the judge was correct in submitting the facts to the jury on the issue of 'deliberate premeditation' . . . ." *Commonwealth* v. *Amazeen,* 375 Mass. 73, 81 n.6 (1978). *Commonwealth* v. *Medina,* 380 Mass. 565, 574 (1980).

determining whether her conduct was murder in the second degree or manslaughter. The jurors could accept or reject Reid's testimony in its entirety, or they could pick and choose which "portions of the defendant's [testimony] as they may consider trustworthy." *Commonwealth* v. *Amazeen*, 375 Mass. 73, 80 n.5 (1978).

Moreover, in considering the question "whether the Commonwealth's evidence is sufficient to withstand a motion for a required finding of not guilty we must determine whether that evidence, considered in the light most favorable to the Commonwealth, was sufficient to permit a jury reasonably to infer the existence beyond a reasonable doubt of each essential element of the crime charged." *Commonwealth* v. *Ferguson, ante* 13, 15 (1981). *Commonwealth* v. *Rhoades*, 379 Mass. 810, 815 (1980). Since there was evidence which negated Reid's claim that she had a right to use deadly force, there was no error in submitting the issue of malice aforethought (murder in the second degree) to the jury.

3. *Supplemental jury instructions.* After deliberating for a period of time, the jury requested additional instructions on the elements of the various crimes on which they had been instructed. Reid objected to the giving of these additional instructions unless the jurors were again instructed on reasonable doubt, the burden of proof, and presumption of innocence.[18] A judge, however, "is not required to repeat all aspects of his prior charge." *Commonwealth* v. *Sellon*, 380 Mass. 220, 234 (1980). *Commonwealth* v. *Peters*, 372 Mass. 319, 324-325 (1977).

Reid also claims the judge's additional instructions concerning self-defense improperly placed upon her the burden of proof on the issue. Reid made no objection to this por-

---

[18] Reid does not raise any issues concerning the propriety of the original charge. She did object to the use of a blackboard while giving the additional instructions. While noting this fact in her brief, Reid fails to make a separate argument, or cite any cases concerning her objection. We deem the matter waived. See *Commonwealth* v. *Cundriff*, 382 Mass. 137, 150 n.22 (1980).

tion of the charge, and her general objection to the additional instructions is insufficient to raise this issue on appeal. "It is a fundamental rule of practice that where a party alleges error in a charge he must bring the alleged error to the attention of the judge in specific terms in order to give the judge an opportunity to rectify the error, if any." *Commonwealth* v. *McDuffee*, 379 Mass. 353, 357 (1979).

Therefore, our review of the charge is limited to determining whether there is an error in the charge which creates a substantial likelihood of a miscarriage of justice. G. L. c. 278, § 33E. We find no such error. Contrary to the defendant's assertion, the judge in his instructions made it abundantly clear that the Commonwealth must prove beyond a reasonable doubt that Reid did not act in self-defense, and that if the Commonwealth failed, the jury was obligated to find Reid not guilty. Viewed as a whole, the judge's charge to the jury made it clear that it was the jury's duty to determine whether the Commonwealth had met its burden of proof as to every element of the crime beyond a reasonable doubt.

4. *Evidentiary issues.* Reid claims that the judge made errors in ruling on the admissibility of evidence. We consider each of these claims, and again conclude that there is no error.

a. *Statements by Reid to Booker.* After the stabbing, somewhere between 6:30 P.M. and 7 P.M., Reid went to the nearby apartment of one Darnell Booker, to talk with Booker. Booker testified at trial to her observations of Reid, but the judge excluded testimony as to the contents of Reid's statement to Booker.[19] Reid claims that this conversation

---

[19] During the trial, a sequestration order was in effect. Before Booker testified it became apparent that she had been in the courtroom during part of the trial. The judge allowed Booker to testify as to her observations of Reid when the defendant arrived at her apartment. The judge ruled that the conversation between Reid and Booker was inadmissible. In his opening, defense counsel made reference to the excluded testimony. Reid asked the judge to inform the jury that Reid's statements to Booker were excluded because of the violation of the sequestration order. Assuming such an instruction might in some circumstances be appropriate, in

was admissible as (1) a spontaneous exclamation, or (2) a prior consistent statement offered to rebut the Commonwealth's implied charge of recent fabrication.

A judge has the discretion to exclude a statement which is claimed to be a spontaneous exclamation if the judge finds that the statement has been made after "there has been time to contrive and misrepresent." *Commonwealth* v. *McLaughlin*, 364 Mass. 211, 223 (1973), quoting from 6 J. Wigmore, Evidence § 1750 (3d ed. 1940). See W.B. Leach & P.J. Liacos, Massachusetts Evidence 250 (4th ed. 1967). The record indicates that Reid had called her mother and the police before going to Booker's apartment, and that there was a considerable time lag between the stabbing and the conversation. "[T]here can be no definite and fixed limit of time. Each case must depend upon its own circumstances." *Commonwealth* v. *McLaughlin, supra,* quoting from 6 J. Wigmore, *supra.* The judge's exclusion of this testimony is well within his discretion. Cf. *Commonwealth* v. *Sellon,* 380 Mass. 220, 229 (1980); *Commonwealth* v. *Hampton,* 351 Mass. 447, 449-450 (1966).

Reid also argues that this conversation should have been admitted to rebut the inference of recent contrivance. Since Booker testified before Reid, this conversation was not admissible to rebut a suggestion that Reid's testimony had been recently fabricated. Prior consistent statements are admissible only *after* a witness is impeached "on the ground that the story told on the stand is a recent contrivance." W.B. Leach & P.J. Liacos, Massachusetts Evidence 131 (4th ed. 1967).

After Reid testified, the defendant again argued that Booker should be allowed to testify to Reid's earlier statement. We disagree. Where, as here, a witness is impeached solely by the contradictory testimony of other witnesses, prior consistent statements are generally not admissible. *Wilson* v.

---

this case the judge correctly denied this motion. Since the judge had ruled the testimony was inadmissible on other grounds, the instruction would have been misleading and inaccurate.

*Jeffrey*, 328 Mass. 192 (1951). W.B. Leach & P.J. Liacos, *supra*. Cf. Proposed Mass. R. Evid. 801 (d) (1) (B) (July, 1980). "Whether the course of the trial has been such as to require a statement of what the witnesses had previously said, to meet an attack upon his testimony, founded on [recent contrivance]," see *Boutillette* v. *Robbins*, 338 Mass. 195, 197-198 (1958), is a matter committed to the judge's discretion. The record amply supports the judge's ruling.

b. *Limitation of recross-examination.* The judge limited recross-examination of the witness Frances Tyree to new matters adverted to on redirect. *Commonwealth* v. *Gordon*, 356 Mass. 598, 602 (1970). Without describing the prior testimony in detail, it is sufficient to state that the judge's ruling did not come close to excluding cross-examination on this issue, "but only limited additional questions on that subject once it had already been raised and explored." *Commonwealth* v. *Watson*, 377 Mass. 814, 837 (1979).

c. *Reid's hospital records.* Reid supported her claim of self-defense by the fact that she suffered from an asthma condition. Reid was allowed to testify to this condition. Moreover, the Commonwealth brought this fact to the jury's attention when it introduced Reid's statement to the police. Subsequently, Reid sought to introduce her hospital records for treatment of the asthma condition. The judge did not allow the hospital records in evidence. G. L. c. 233, § 79. The fact that Reid suffered from asthma was collateral to Reid's claim that she was attacked by the victim. While it would not have been error to admit the hospital records, we cannot conclude that it was an abuse of discretion to exclude them. See *Commonwealth* v. *Hubbard*, 371 Mass. 160, 175 (1976).

d. *The autopsy photograph and bloodstained materials.* At trial, the judge allowed in evidence an autopsy photograph of the victim, as well as his bloodstained clothing and washcloths used to cover the stab wound. Relying on *Commonwealth* v. *Bastarache*, 382 Mass. 86 (1980), Reid claims the judge abused his discretion. She argues that since the cause of death was not disputed, these items had no pro-

bative value and were unduly inflammatory. In *Bastarache, supra* at 105-106, we stated "that the autopsy photographs of the victim's brain and of the interior of his skull after the brain was removed were inflammatory, graphic, and grisly." However, we did not hold that the photographs lacked relevance, noting that "[a]s a general rule, a judge may admit relevant evidence even if a party has agreed to stipulate to the fact that the offered evidence tends to prove." *Id.* at 106.

The bloodstained materials and the autopsy photograph of the victim in this case, depicting a single stab wound to the chest, and beneath it the sutured surgical incision made during attempts to save the victim's life, are not "grisly" and "inflammatory" in nature. Moreover, the exact location of the wound and the manner in which the victim died were probative on the degree of guilt as well as the claim of self-defense. *Commonwealth* v. *Stroud,* 375 Mass. 265, 272 (1978) (bloodstained clothing). *Commonwealth* v. *Cadwell,* 374 Mass. 308, 314-315 (1978) (photographs). *Commonwealth* v. *Bys,* 370 Mass. 350, 359-360 (1976) (photographs). Compare *Commonwealth* v. *Richmond,* 371 Mass. 563, 565 (1976) (photographs). There was no error.

5. *Review under G. L. c. 278, § 33E.* We have reviewed the whole case, with consideration of both the law and the evidence, and we conclude that the defendant is not entitled to relief under G. L. c. 278, § 33E.

*Judgment affirmed.*