COMMONWEALTH *vs.* RICHARD ODELL.

No. 91-P-718.

Middlesex. October 13, 1992. - February 4, 1993.

Present: KASS, JACOBS, & GREENBERG, JJ.

*Rape. Administering Drug with Intent of Facilitating Unlawful Sexual Intercourse. Jury and Jurors. Practice, Criminal,* Challenge of jurors. *Evidence,* Pattern of conduct.

At a criminal trial the judge properly exercised his discretion in determining that the defendant's exercise of peremptory challenges to exclude eight of the nine women drawn from the venire had an improper and unlawful motive. [101-102]

At a criminal trial the judge properly admitted in evidence a conversation of the defendant with his nephew and a note written by the defendant that explicitly described a proposed pattern of conduct that was highly probative of the pattern of unlawful conduct the Commonwealth sought to prove in its case-in-chief. [102-104]

Sufficient corroborated evidence was presented at a criminal trial to warrant submission to a jury of a charge of administering a drug with intent to overpower or stupefy a person for the purpose of unlawful sexual intercourse (G. L. c. 272, § 3). [104]

INDICTMENTS found and returned in the Superior Court Department on May 4, 1989.

The cases were tried before *Paul A. Chernoff*, J.

*Stephen E. Dawley* for the defendant.

*Patricia M. Darrigo*, Assistant District Attorney, for the Commonwealth.

KASS, J. Stripped of sordid detail, the charge against the defendant Richard Odell is that he plied four teenage girls with alcohol and drugs and molested them sexually while they were asleep or semi-conscious. After a nine-day trial, a jury convicted Odell of rape, administering a drug with the intent to overpower or stupefy a person so as to have unlawful sexual intercourse (G. L. c. 272, § 3), six counts of con-

tributing to the delinquency of a minor (G. L. c. 119, § 63), four counts of indecent assault and battery, and one count of indecent assault and battery on a child under the age of fourteen.

1. *Limitation on peremptory challenges.* When defense counsel made his first round of peremptory challenges, they were all directed against women. That did not escape the notice of the trial judge, who asked for an explanation. The reasons offered were less than overwhelming: juror has young children; is a mother; defense doesn't like the way she looks. Three of the next four challenges were also of women and involved all but one of the women chosen from the venire in the second draw. The judge was moved to remark, "The pattern is obvious at this point."[1] Defense counsel protested that the problem was that women with young children would be dangerous to the defendant in a case involving molestation of children. Two of the women he had challenged were sixty-two and sixty-seven years of age respectively, however, and had no young children. Counsel shifted ground: the problem with those women was that they were too old.

At this point, eight of nine women drawn from the venire had been challenged. The judge thought that defense counsel had not met the burden of explanation required of a party who appears to the judge to be attempting to purge the jury of a particular race or gender. See *Commonwealth* v. *Soares,* 377 Mass. 461, 489-491 (1979); *Commonwealth* v. *Reid,* 384 Mass. 247, 254-255 (1981). The judge told defense counsel he could have one of the peremptory challenges involving the women in their sixties, but not both; defense counsel could choose whom he would challenge. By allowing a choice, the defense argues, the judge implicitly accepted some validity in the challenge to both jurors, and it was error to force the surrender of the right to make a peremptory challenge of one or the other.

Trial judges have considerable discretion in the diagnosis and management of efforts to exclude a discrete community

---

[1]The trial judge was entitled to raise the *Soares* issue on his own motion. *Commonwealth* v. *Reid,* 384 Mass. 247, 251 n.7 (1981).

group from a jury. *Commonwealth* v. *Harris*, 409 Mass. 461, 468 (1991). *Commonwealth* v. *DiMatteo*, 12 Mass. App. Ct. 547, 552-553 (1981). *Commonwealth* v. *Legendre*, 25 Mass. App. Ct. 948, 949 (1988). In the instant case, the trial judge could reasonably decide that the defense's pattern of excluding women from being seated on the jury had an improper objective and was unlawful under the *Soares* line of cases. That inference of impropriety was rebuttable and, in judging the rebuttal, a judge takes into account the presumption of proper use of a peremptory challenge. Applying those principles, the judge could justifiably have decided that the reasons offered for challenging the last two women drawn from the venire amounted to no more than an awkward pretext and that the defendant's real reason for the challenges was to get as many women off the jury as he could. The judge could have disapproved both challenges, and the defendant has nothing to complain about because the judge, as matter of discretion in the practical management of the jury selection process, let the defendant have a peremptory challenge to which he was not entitled. Compare *Commonwealth* v. *Hyatt*, 409 Mass. 689, 690-691 (1991), in which a similar one-or-the-other choice was offered but the problem was that both of the jurors there in question were properly subject to peremptory challenge. Here the judge correctly adjudged improper the two peremptory challenges to which the defendant's appeal refers.

2. *Evidence of postindictment bad act of the defendant.* Odell was indicted May 4, 1989, briefly incarcerated, and released on bail towards the end of that month. Odell went to live with his sister. Close to three months later, in July, 1989, Odell talked to his teen-age nephew about having him call up a teen-age girl friend of his, i.e., the nephew's, find out whether she and a friend of hers would come over, and to find out if they liked any particular drugs or liked to drink. The idea was to get the girls intoxicated so that Odell and his nephew could engage in sexual intercourse with them. To assure that his nephew would have the scenario straight, Odell wrote out for him a prompting note which read: "What

they drink, drugs, acid, etcetera, sneak in window, if they get fucked up they stay the night, one upstairs, one downstairs. I will make sure one gets back downstairs before Bonnie [the defendant's sister] wakes up."

Nothing came of the plan; the nephew had not been able to reach either girl. Before the taking of evidence, the defendant moved in limine to exclude the conversation of Odell with his nephew and the note. To the general principle that evidence of prior bad acts and subsequent bad acts ought not to be admitted to show propensity to commit a crime, *Commonwealth* v. *Montanino*, 409 Mass. 500, 505 (1991), there is, among others, an exception which allows the use of such evidence to prove a common scheme or pattern of operations. *Ibid.* See also *Commonwealth* v. *King*, 387 Mass. 464, 471-472 (1982); *Commonwealth* v. *Helfant*, 398 Mass. 214, 224 (1986). Those cases prescribe that the other acts must be proximate in time and of a character to give them probative, rather than simply inflammatory, force. Weighing the timeliness, place, character, or probative value of the proffered evidence is a task as to which the trial judge "must be invested with a measure of discretion." *Commonwealth* v. *Doherty*, 23 Mass. App. Ct. 633, 637 (1987). Whether the acts occurred before or after the acts for which the defendant is on trial is not significant.

Here, the defendant complains, there was not even evidence of bad conduct, just conversation and writing about something that never happened. In terms of proving a pattern, the conversation and Odell's note to his nephew were better than acts which show a pattern; they *were* the pattern. The trial judge was well within his discretion in receiving the evidence; it involved an incident which took place within three months of the acts for which the defendant stood indicted and, thus, was timely. As we have said, the evidence was highly probative. Before the evidence was offered, the judge instructed the jury that the evidence concerning Odell's proposal to his nephew was being received for the limited purpose of proving a pattern of conduct, although the

jury, he added, were free to consider whether a pattern of conduct was in fact shown.

3. *Required finding of not guilty.* The defendant urges that there was no corroborated evidence that he administered a drug to a person and that, therefore, he was entitled to a required finding of not guilty. There was, however, corroborated evidence from one of the four teenagers that Odell had given pills to one of the other girls, thus satisfying the corroboration requirement of G. L. c. 272, § 11.[2] The argument that having given the teenagers a seasickness medication did not constitute administering a "drug" in the statutory sense has no merit. A substance with a medicinal purpose is a drug in the statutory sense of the word, see G. L. c. 94, § 1, or in the ordinary sense of the word, see The American Heritage Dictionary 565 (3d ed. 1992). There was ample evidence to reach a jury.

4. *Jury instructions.* In the absence of any objection made at the time of trial, we do not consider the claim of error in the judge's instructions to the jury. We are well satisfied that there is no substantial risk of a miscarriage of justice. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967).

*Judgments affirmed.*

---

[2]That statute provides: "A person shall not be convicted under sections two to six, inclusive, upon the evidence of one witness only, unless his testimony is corroborated in a material particular, and prosecution for a violation of any of said sections shall not be commenced more than one year after the commission of the crime."