## COMMONWEALTH *VS.* LENNY FRUCHTMAN.

Middlesex. April 4, 1994. - May 27, 1994.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & GREANEY, JJ.

*Jury and Jurors. Practice, Criminal,* Challenge to jurors, Fair trial, Argu-
ment by prosecutor, Instructions to jury. *Constitutional Law,* Jury. *Evi-
dence,* Cross-examination, Offer of proof, Impeachment of credibility.
*Witness,* Impeachment. *Indecent Assault and Battery.*

At the trial of indictments for sexual abuse of a child, where the defendant
used his peremptory challenges to attempt to exclude all women from
the jury, the judge correctly determined this to be a pattern of discrimi-
nation based on gender and properly required the defendant to provide
a gender-neutral reason for each of the challenges. [12-15]
At a criminal trial, where it appeared to the judge that the defendant was
engaging in a pattern of gender-based peremptory challenges to elimi-
nate as many women as possible from the jury, the judge acted properly
within her discretion to create a remedy that resulted in a panel being
seated that was fairly balanced between men and women, and there
was no merit to the defendant's claim that the judge's actions denied
him an impartial jury as guaranteed by art. 12 of the Declaration of
Rights of the Massachusetts Constitution. [16-17]
At the trial of indictments, where the information available to the defend-
ant was sufficient to allow him to identify unqualified jurors and where
the empanelment process comported with the provisions of art. 12 of
the Declaration of Rights that guarantee an impartial jury, there was
no merit to the defendant's contention that the empanelment process
abridged his right to a fair trial guaranteed by the Federal Constitu-
tion's due process clause. [17]
At the trial of indictments for sexual abuse the judge correctly rejected as
completely inadequate the defendant's offer of proof attempting to show
that the victim had falsely accused other men of sexually assaulting
her. [17-18]
At a criminal trial the judge acted properly in excluding, as an allegedly
prior inconsistent statement of the victim offered to impeach her, mate-
rial in a report written by a social worker that was not demonstrated to
be based on any statement or communication by the victim. [18]
At a criminal trial, during the prosecutor's closing argument, a misstate-
ment of the evidence by the prosecutor, not objected to by the defend-

ant, could not have created a substantial risk of a miscarriage of justice in light of the judge's instructions [18]; certain other arguments of the prosecutor were a proper effort to rebut defense contentions [18-19]; and any possibility of prejudice arising from an improper appeal to the jurors' sympathy by the prosecutor was eliminated by the judge's forceful and accurate instructions [19].

In view of a criminal trial as a whole, including the evidence, arguments and instructions, there was no substantial risk that the defendant's convictions on two indictments were duplicative. [19-20]

INDICTMENTS found and returned in the Superior Court Department on December 12, 1990.

The case was tried before *Wendie I. Gershengorn*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Michael J. Traft* for the defendant.

*Lincoln S. Jalelian*, Asssistant District Attorney, for the Commonwealth.

GREANEY, J. A jury in the Superior Court convicted the defendant, Lenny Fruchtman, on indictments charging him with unnatural sexual intercourse with a child by force, G. L. c. 265, § 22A (1992 ed.), and indecent assault and battery on a child under the age of fourteen, G. L. c. 265, § 13B (1992 ed.). He was acquitted on an indictment charging him with natural intercourse with a child by force, G. L. c. 265, § 22A (1992 ed.). The defendant was sentenced to concurrent terms of imprisonment at the Massachusetts Correctional Institution, Cedar Junction. The charges concerned the defendant's stepdaughter who was born on December 27, 1971. There was evidence that, beginning in December, 1980, and continuing thereafter, the defendant had forced the victim to commit sexual acts with him. Represented by new counsel on appeal, the defendant claims error in the judge's refusal to permit him to exercise peremptory challenges against prospective women jurors and in the limitation of cross-examination of the victim. The defendant also argues that portions of the prosecutor's final argument exceeded proper bounds, and that the jury instructions may

have caused the jury to return duplicative convictions. We transferred the case to this court on our own motion and now affirm the judgments of conviction.

1. *Limitation on peremptory challenges.* The background of this issue may be summarized as follows. The judge began the empanelment process by introducing the parties, describing the nature of the charges, and listing potential witnesses. The prospective jurors, as a group, were asked the questions prescribed by G. L. c. 234, § 28 (1992 ed.), and Mass. R. Crim. P. 20 (b) (1), 378 Mass. 889 (1979), concerning, among other things, knowledge about the case, the formation of any opinion, and the ability to be impartial.[1] Many prospective jurors responded. A total of fourteen were excused for cause, two because of a physical or personal schedule problem, and twelve because of some expressed bias.[2] The judge refused to excuse two other women for cause over the defendant's objection.[3]

Sixteen prospective jurors were seated, nine men and seven women, and the peremptory challenge process began in accordance with Superior Court Rule 6 (1994). The prosecutor

[1]The judge did not grant the defendant's requests for individual voir dire and the presentation of two special questions — whether any of the prospective jurors had been the victim of a crime and whether the nature of the charges would prevent any of the jurors from being indifferent. In *Commonwealth* v. *Flebotte*, 417 Mass. 348, 355-356 (1994), we exercised our power of general superintendence to require a judge in a case where a defendant is charged with a sexual offense against a child to question each potential juror individually as to whether the juror had been a victim of a childhood sexual offense. This requirement applies to cases tried after the *Flebotte* opinion. *Id.* at 355.

[2]Seven of the nine women who were excused stated that they were biased because of the nature of the charges. Of the four men excused for cause, one stated that he would be biased against a defendant in all cases involving a crime of violence, one stated that he had been raped as a child, and two stated they doubted their impartiality based on the nature of the charges.

[3]One woman who had four children stated the case would be difficult for her to handle because of the sensitive issue involved, but ultimately agreed with the judge that she could listen to the evidence and the jury instructions and "call it the way [she] saw it." The other woman had been a victim of rape, but indicated that she would be impartial.

exercised peremptory challenges against two men and one woman and declared herself satisfied. Three additional jurors, two women and one man, were seated. The defendant then sought to use eight of his sixteen peremptory challenges to exclude all of the women in the jury box. The prosecutor questioned the defendant's use of his peremptory challenges. Stating that she perceived an apparent pattern of discrimination based on gender, the judge required the defendant to provide a gender-neutral reason for each of the challenges.[4]

The judge allowed the defendant to exercise peremptory challenges against three prospective women jurors who had children around the age of the defendant's stepdaughter at the time she was abused. She also allowed a challenge to a woman whose husband was a police officer. The defendant withdrew one of his challenges. The judge refused to allow the defendant to use three other peremptory challenges, concluding that the defendant did not have legitimate gender-neutral reasons for those challenges.[5]

Thereafter, for each further peremptory challenge which the defendant attempted to use against a woman, the judge required him to state a gender-neutral reason. The judge permitted the defendant to use six more challenges — two

---

[4]The defendant exercised the challenges personally, not through counsel, and he personally stated his reasons to the judge.

[5]The defendant explained his reasons for the three peremptory challenges as follows. One of the prospective jurors worked in a school. The defendant claimed she might be biased because of her contact with children. The judge rejected the challenge because the woman was a clerk-typist, and not, for example, a teacher.

The second of these challenges was directed at a woman who worked at Children's Hospital. The defendant noted that the hospital has a child abuse section, suggesting that the juror might be influenced in some way because of that. The judge pointed out that the woman did not work in the child abuse section; she was a software analyst.

The third challenge was against a woman who worked at Beth Israel Hospital. According to the defendant, her position at a hospital meant she might come in contact with children. The judge, noting she was a medical technician, stated that there was "not one bit of evidence that she has anything to do with children," and rejected the challenge.

against men and four against women — and disallowed another of the defendant's challenges against a woman.[6]

When the jury selection process was completed, there were ten men and six women on the jury. When the alternates were eliminated, there were seven men and five women. In the end, the defendant had exercised nine of his alloted sixteen peremptory challenges. He had attempted to use twelve challenges against women; seven had been permitted, one had been withdrawn, and four had been rejected by the judge.[7]

The defendant makes several contentions to support his conclusion that the judge erred in overruling his peremptory challenges to prospective women jurors. First, he argues that, because he had not been allowed individual voir dire and was obliged to rely on the general information furnished in the prospective jurors' questionnaires to make his peremptory challenges, a requirement that he articulate specific gender-neutral reasons to justify the challenges put him in a dilemma which impaired their meaningful use. Second, he argues that the empanelment process violated art. 12 of the Declaration of Rights of the Massachusetts Constitution because the judge's remedy, disallowance of the challenges, effectively deprived him of the right to challenge at all. Relying on these same claims about the unfairness of the jury selection process, the defendant also maintains that his Federal constitutional right to a fair trial has been abridged.[8] .

---

[6]The defendant attempted to exclude the last woman because she said that she had an illness which could flare up in an emotional situation. The judge determined that this consideration alone was not a legitimate reason for a peremptory challenge. The Commonwealth then exercised one of its remaining peremptory challenges against this juror and she was excused.

[7]At the conclusion of empanelment, the defendant, through his trial counsel, expressed satisfaction with the jury as seated. We do not consider this as an abandonment of his claim that he was improperly denied peremptory challenges. The defendant objected to the disallowance of the challenges in order specifically to preserve his rights for appeal. His expression of contentment with the jury was subject to his properly preserved objections to their selection.

[8]When this case was argued on appeal, the United States Supreme Court had not yet addressed the question whether the use of peremptory

The defendant's first contention is not persuasive. While the right to use peremptory challenges is a most important one, see *Swain* v. *Alabama*, 380 U.S. 202, 219 (1965), the right cannot be used to eliminate prospective jurors "solely because of their membership in discrete groups." *Commonwealth* v. *Allen*, 379 Mass. 564, 576 (1980). Representation from a broad cross-section of the community is a fundamental feature of a fair jury, *Commonwealth* v. *Harris*, 409 Mass. 461, 466 (1991), and we have held, based on the Massachusetts Constitution, that gender cannot permissibly form the basis for juror exclusion. *Commonwealth* v. *Soares*, 377 Mass. 461, 488-489, cert. denied, 444 U.S. 881 (1979).

Further, a defendant alone cannot claim the right to a representative jury. The Commonwealth is equally entitled to a fairly selected and representative jury, and may challenge a defendant's exercise of peremptory challenges, if it appears that the goal of obtaining a representative jury is being purposely thwarted. See *Georgia* v. *McCollum,* 505 U.S. 42, 50-59 (1992); *Commonwealth* v. *Little*, 384 Mass. 262, 265 (1981), rev'd on other grounds, *Commonwealth* v. *Santos*, 402 Mass. 775, 788 (1988). As we said in *Commonwealth* v. *Soares, supra* at 489 n.35: "While we have highlighted a defendant's right to be protected from the improper use of pe-

---

challenges based on gender violated the United States Constitution. A majority of the Court has now ruled unconstitutional the use of peremptory challenges based on gender. See *J.E.B.* v. *Alabama ex rel. T.B.*, 114 S. Ct. 1419 (1994). The *J.E.B.* decision concerned the use of peremptory challenges against male jurors by the State of Alabama. We infer from the majority opinion, which discusses the right of jurors "to nondiscriminatory jury selection procedures," *id.* at 1427, and from Justice Kennedy's concurring opinion, which also discusses the rights of "an individual denied jury service because of a peremptory challenge exercised . . . on account . . . of sex," *id.* at 1434 (Kennedy, J., concurring), that a majority of the Court would reach the same conclusion had the peremptory challenges been exercised by a criminal defendant. See *Georgia* v. *McCollum,* 505 U.S. 42 (1992) (criminal defendant may not exercise peremptory challenges based on race of juror). In view of the *J.E.B.* and *McCollum* decisions, we need not consider the defendant's argument that if Federal law permitted the use of peremptory challenges based on a juror's gender, the law of the Commonwealth could not prohibit such challenges.

remptory challenges, we recognize the Commonwealth's interest in prosecutions that are 'tried before the tribunal which the Constitution regards as most likely to produce a fair result.' *Singer* v. *United States*, 380 U.S. 24, 36 (1965). For this reason, we deem the Commonwealth equally to be entitled to a representative jury, unimpaired by improper exercise of peremptory challenges by the defense."

The judge was not obliged in this case to give the defendant individual voir dire or to ask the two special questions requested. The defendant had an adequate factual basis on which to formulate his decision to challenge. That basis was derived from the responses to the general statutory voir dire, and the information furnished by each prospective juror in his or her confidential juror questionnaire, more completely described below.[9] We reject the defendant's argument, therefore, that he was faced with a dilemma in expressing reasons for his challenges based on inadequate information. We also categorically reject his argument that "it may not be unreasonable to suspect that females are more likely to harbor a latent bias against [a] defendant [in a child sexual abuse case] solely due to the nature of the charges" because "[f]emales are more likely to be caretakers of young children

---

[9]General Laws c. 234A, § 22 (1992 ed.), provides, in pertinent part, as follows:

> "Enclosed with the juror summons shall be a confidential juror questionnaire. The information elicited by the questionnaire shall be such information as is ordinarily raised in *voir dire* examinations of jurors, including the juror's name, sex, age, residence, marital status, number and ages of children, education level, occupation, employment address, spouse's occupation, spouse's employment address, previous service as a juror, present or past involvement as a party to civil or criminal litigation, relationship to a police or law enforcement officer, and such other information as the jury commissioner deems appropriate."

Under G. L. c. 234A, § 23 (1992 ed.), counsel are provided with copies of these questionnaires for use during voir dire. In *Commonwealth* v. *Allen*, 379 Mass. 564, 578 n.9 (1980), we described the information in this type of questionnaire as "much more extensive" than what had been furnished to counsel under the prior method of jury selection in G. L. c. 234, §§ 4 and 5, prior to the complete revision of G. L. c. 234A, as appearing in St. 1982, c. 298, § 1.

and to be employed in human services agencies." Gender may not be treated as a surrogate for bias. We do not believe that women as a group are less capable than men of evaluating factual assertions, assessing credibility, and reaching a fair and reasoned result based on all of the evidence before them.

The defendant's attempted use of his peremptory challenges to exclude all women from the jury, authorized the prosecutor properly to object to, and the judge properly to find, the existence of an improper pattern of peremptory challenges under the *Soares* line of cases. The defendant was correctly called on to provide adequate justification for the suspect challenges. The determination whether the defendant's explanation of each challenge was sufficient to establish a nondiscriminatory basis was within the judge's discretion. See *Commonwealth* v. *Reid*, 384 Mass. 247, 254-255 (1981); *Commonwealth* v. *Soares, supra* at 491; *Commonwealth* v. *Legendre*, 25 Mass. App. Ct. 948, 949 (1988); *Commonwealth* v. *DiMatteo*, 12 Mass. App. Ct. 547, 552 (1981) ("Sorting out whether a permissible or impermissible reason underlies a peremptory challenge is the function of the trial judge, and we do not substitute our judgment for his if there is support for it on the record").

The inference of improper conduct in the defendant's use of peremptory challenges was rebuttable. The judge acted justifiably, and fairly, in accepting the defendant's explanations for seven peremptory challenges to prospective women jurors and in rejecting the three employment-based peremptory challenges, see note 5, *supra*, and the fourth peremptory challenge to the woman with an illness that might flare up in a tense situation, see note 6, *supra*. Choice of remedy was also the prerogative of the judge. She was not required to dismiss the jurors selected and to quash the venire or to fashion some other remedy. See *Commonwealth* v. *Reid, supra* at 255 & n.15; *Commonwealth* v. *Odell*, 34 Mass. App. Ct. 100, 101-102 (1993). The final jury of ten men and six women constituted a fair and representative panel.

The defendant's constitutional arguments are also not persuasive. The defendant points out that, unlike the situation with minorities, most jury venires statistically should have about the same number of men as women. Consequently, the defendant reasons, it is much less likely that any effort to exercise peremptory challenges disproportionately can skew the resulting jury. Therefore, the defendant maintains that to have forced him to justify all challenges against women, when he had inadequate information available to him and the judge was following the procedure set forth in rule 6, severely hampered his right to exercise his right to challenge fully and fairly.[10] In the defendant's view, the judge should have either required explanations from both parties for all challenges or permitted him to choose among suspect challenges. The defendant concludes that "[i]n the context of this case, the judge's actions, in combination, denied [him] his [S]tate constitutional right [under art. 12] to an impartial jury."

When it appears, as it did here, that a defendant is engaging in a pattern of gender-based peremptory challenges to eliminate as many women as possible from the jury, a judge should not be limited in the choice of remedy. The judge, in her discretion, could have permitted the defendant to choose among suspect challenges, see *Commonwealth* v. *Odell*, *supra* at 101-102, but she certainly was not required to do so.[11] We can see no need for a different set of rules in the

---

[10]Under Superior Court Rule 6, if a party has not exercised a peremptory challenge on a selected juror, that juror remains on the panel, and the party's right to exercise peremptory challenges pertains only to new venire persons called to replace those who have been challenged. The defendant considers this unfair in this case because he could not go back and exercise peremptory challenges, and he was forced to justify every challenge to a woman who was called. We note that the defendant was left with unused peremptory challenges, and we are not impressed with his argument that "any reason offered for a [further] challenge to . . . women would likely be again overruled."

[11]We do not condone the defendant's suggestion that once it is determined that one party has used peremptory challenges based on membership in a discrete group, both parties should be required to justify their use of peremptory challenges. The fact that one party has attempted to use

area of gender-based peremptory challenges. Each case will present its own set of difficulties, and judges should be free to deal with each situation as it develops before them. As has been pointed out, the judge here acted properly, and the resulting panel was fairly balanced between men and women. The defendant has demonstrated no violation of art. 12.

The defendant's remaining argument under the Federal Constitution's due process clause fares no better. "[P]eremptory challenges are not constitutionally protected fundamental rights; rather, they are but one state-created means to the constitutional end of an impartial jury and a fair trial." *Georgia* v. *McCollum*, 505 U.S. 42, 57 (1992). See also *Commonwealth* v. *Reid, supra* at 254. We have already stated that the information available to the defendant was sufficient to allow him to identify unqualified jurors. The rights we are enforcing are those guaranteed under the Massachusetts Constitution. Those rights are intended to benefit both sides in a criminal trial, and to protect the right of each person to have the opportunity to serve on a jury without fear of exclusion due to invidious gender-based discrimination. For these, and the other reasons already expressed, the defendant has not suffered any violation of his Federal constitutional right to be tried by a fairly selected, representative jury.

2. *Cross-examination.* The judge did not err in limiting the defendant's cross-examination of the victim. The first instance the defendant complains of concerns an attempt by his trial counsel to show that the victim had falsely accused other men of sexually assaulting her. The offer of proof on the issue consisted of a note written by the defendant during the trial stating that "she also said that someone named [G] raped her and that [M.P.] and [H.A.] raped her two [*sic*]."[12] The offer of proof was completely inadequate and was cor-

---

impermissible trial tactics should not serve as the basis for imposing special obligations on the other party.

[12]Initials have been substituted in place of the names of the men mentioned in the defendant's note.

rectly rejected by the judge.[13] See *Commonwealth* v. *Lavelle*, 414 Mass. 146, 151 (1993) (there must be basis in independent third-party records that witness made prior accusations); *Commonwealth* v. *Bohannon*, 376 Mass. 90, 95 (1978), *S.C.*, 385 Mass. 73 (1982); *Commonwealth* v. *Hicks*, 23 Mass. App. Ct. 487, 489 (1987).

The other instance complained of by the defendant concerned an effort by his trial counsel to impeach the victim witness as to a possible motive for accusing the defendant of rape. The attempted impeachment involved information in a report written by a social worker. The judge acted within her discretion in not allowing, as an allegedly prior inconsistent statement, material in the report which was not shown to be based on any statement or communication by the victim. See *Commonwealth* v. *Hesketh*, 386 Mass. 153, 160-161 (1982); *Commonwealth* v. *Williams*, 378 Mass. 217, 230 (1979).

3. *Prosecutor's closing argument.* There is no reason to order a new trial based on the criticized parts of the prosecutor's closing argument.

(a) The prosecutor stated in her closing that a social worker, who testified at the trial, had met with the defendant. The social worker did not testify that she had met with the defendant. The prosecutor argued that the defendant was asking the jury to believe that the social worker's testimony as a whole was false. The prosecutor's misstatement as to the purported meeting was not objected to by the defendant. The jury were instructed several times that the arguments of counsel were not evidence. They were told that their recollection of the facts was controlling. The argument could not have caused a substantial risk of a miscarriage of justice.

(b) The prosecutor's statements that "the defendant wants you to believe" certain things were a proper effort to rebut the defense theory that the defendant's stepdaughter had manufactured her allegations to be vindictive and to collude

---

[13]The victim did admit in cross-examination that she had falsely accused her mother's previous boy friend of rape, and the defendant testified that his stepdaughter had made allegations of sexual assault against other men.

with her mother in forcing the defendant to pay money to have the charges dropped. We perceive in these parts of the prosecutor's closing no unfair characterization of the defense and, after the judge's final instructions, nothing which lessened the Commonwealth's burden of proof.

(c) The victim testified that, during the sexual abuse, the defendant told her that she would not be believed if she complained. The prosecutor, at the end of her closing, reminded the jury of that testimony, and said to the jury, "Don't let that threat come true." There was an objection. The argument was an improper appeal to sympathy and should not have been made. The judge forcefully and accurately instructed the jury on both the nature of closing arguments, the Commonwealth's burden of proof, and the jury's role as ultimate fact finders. The judge also told the jury to decide the case "without any prejudice, without fear, without favor, [and] without sympathy," that they should not be "influenced by the notoriety, or the lack of notoriety, of the crimes charged," and that they had to remain neutral fact finders.[14] The judge's instructions eliminated any possibility of prejudice. See *Commonwealth* v. *Costa*, 414 Mass. 618, 629 & n.8 (1993); *Commonwealth* v. *Habarek*, 402 Mass. 105, 110-111 (1988).

4. *Alleged duplicative convictions.* In view of the victim's testimony to three distinct kinds of sexual abuse (fellatio, vaginal rape, and being forced to take the defendant's penis in her hand and masturbate him to the point of ejaculation), the other evidence in the case, the closing arguments, the judge's instructions (which described the elements of each crime charged with particularity), and the jury's acquittal of the defendant on the indictment charging natural intercourse

---

[14]Near the conclusion of her instructions, the judge told the jury the following:

"I suggest to you that it is critical that you remember that you are not partisans in this case. You are not here to advocate for the Commonwealth and you are not here to advocate for the defendant. You are judges. You are judges of the facts of this case and that is an awesome responsibility in the true sense of that word."

with a child by force, there is no substantial risk, based on anything said or not said in the instructions, that the defendant's conviction of indecent assault and battery on a child under the age of fourteen could have been based on the same conduct as was his conviction of unnatural sexual intercourse with a child by force.[15]

*Judgments affirmed.*

---

[15]The defendant's trial counsel made no objection to the jury instructions which outlined the elements of the crimes charged and what would be necessary to convict on each one. The issue is considered, therefore, under the substantial risk of a miscarriage of justice standard.