Willie Ray GREEN, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–90–948.

Court of Criminal Appeals of Oklahoma.

June 30, 1993.

Rehearing Denied Sept. 7, 1993.

---

Joel Porter, Asst. Public Defender, Dora S. Roberts, Asst. Public Defender, Oklahoma City, for appellant.

Robert H. Macy, Oklahoma County Dist. Atty., Fern Smith & Pam King, Asst. Dist. Attys., Robert H. Henry, Atty. Gen., Steven S. Kerr, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

CHAPEL, Judge:

Willie Ray Green was tried by a jury and convicted of two counts of Robbery with Firearms (21 O.S.Supp.1982, § 801) and one count of Shooting with Intent to Kill (21 O.S.Supp.1987, § 652), both After Former Conviction of a Felony (21 O.S.Supp.1985, § 51), in Oklahoma County District Court, Case No. CRF–89–4865, before the Honorable James B. Blevins, District Judge. The jury recommended and the judge imposed sentences of life imprisonment on each of the three counts. The trial judge ordered the robbery sentences to run concurrently, and the sentence for shooting with intent to kill to run consecutively with the robbery sentences. From these judgments and sentences, Green has perfected his appeal.

On September 6, 1989, Green and his codefendant, Michael Joe Wayne Broadnax[1], committed an armed robbery at the Buy Fast Foods convenience store. A couple drove their truck into the store parking

---

1. Michael Joe Wayne Broadnax was charged and tried along with Green. The jury found Broadnax guilty on all three counts. The jury recommended and the judge imposed sentences of ten (10) years imprisonment on each count (Broadnax had no prior convictions). The judge ordered that these sentences run concurrently. Broadnax appealed to this Court by way of the accelerated docket procedure under Case No. F–90–1113.

lot as the robbery was completed. They witnessed Broadnax get into a car and drive away. When the store owner ran out and exclaimed he had been robbed, the couple pursued the getaway car.

As the couple neared Broadnax, they saw Green running after him. Green shot at the couple several times while he chased Broadnax. Upon entering Broadnax's car, Green shot again at the couple. This time, the bullet shattered one of the truck's windows, causing minor injuries to the man. Ultimately, Green and Broadnax exited their car near a wooded area. The police found and arrested them shortly thereafter.

When Green and Broadnax testified at trial, they both admitted to participating in the alleged offenses. Each claimed the other "forced" him to commit the crimes. The jury found both guilty on all three counts alleged in the information.

We need only address Green's second proposition because it raises a trial error which warrants reversal. Green claims three of the State's peremptory challenges were racially motivated and thus violative of the Equal Protection Clause of the Fourteenth Amendment. See Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1985). We hold that the trial court's failure to require the State to provide a race-neutral explanation for the exercise of one of these peremptory challenges violated the principles set forth in Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). Accordingly, this case must be reversed and remanded for a new trial.

The peremptory challenge at issue was exercised to remove Juror Draper from the panel.[2] The judge thought prospective Juror Draper was Hispanic. The State claimed she was Caucasian. Defense Counsel thought Ms. Draper was, like Green, an African–American. However, defense counsel argued that even if Ms. Draper were Hispanic and not African–American, she was still a member of a cognizable racial minority, the exclusion of whom could support a Batson challenge.

The United States Supreme Court held in Batson that "a defendant can raise an equal protection challenge to the use of peremptories at his own trial by showing that the prosecutor used them for the purpose of excluding members of the defendant's race." Id. at 96, 106 S.Ct. at 1722. In Powers, the Court extended Batson to allow a criminal defendant to "object to race-based exclusions of jurors effected through peremptory challenges whether or not the defendant and the excluded juror share the same race." Id. at ——, 111 S.Ct. at 1366 (emphasis added). The trial judge in this case apparently concluded that because Ms. Draper and Green were not of the same racial minority, Green could not make a prima facie case of discrimination under Batson.

Powers clearly holds that racial identity between the accused and the prospective juror is not a precondition for a Batson challenge. But for the trial court's conclusion that the racial difference between Green and prospective Juror Draper was fatal to his Batson challenge, the evidence Green presented would have constituted a prima facie case of discrimination. Under Powers, the trial court should have required the State to articulate a race-neutral reason for exercising its second peremptory challenge to remove Ms. Draper. Its failure to do so requires that this case be remanded for a new trial.

In accordance with then current United States Supreme Court jurisprudence, this Court has previously held that racial identity between a defendant and a prospective

---

2. Two hearings pursuant to Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), were conducted during the course of voir dire. While Green failed to request transcription of the voir dire proceeding, the two Batson hearings were transcribed and submitted on appeal. Green's objection to the State's exercise of a peremptory challenge to Juror Draper was raised and argued during the second Batson hearing. Although the particular voir dire exchanges between Juror Draper and the prosecutor are not available for review, the record of the second Batson hearing has provided this Court with a complete picture of the relevant facts.

juror is a prerequisite to a *Batson* challenge. *See Litteer v. State*, 783 P.2d 971 (Okl.Cr.1989); *Miller v. State*, 781 P.2d 846 (Okl.Cr.1989), and *Nguyen v. State*, 769 P.2d 167 (Okl.Cr.1988), *cert. denied*, 492 U.S. 925, 109 S.Ct. 3264, 106 L.Ed.2d 609 (1989). *See also Manuel v. State*, 751 P.2d 764 (Okl.Cr.1988), and *Johnson v. State*, 731 P.2d 993 (Okl.Cr.1987), *cert. denied*, 484 U.S. 878, 108 S.Ct. 35, 98 L.Ed.2d 167 (1987). To the extent that these and any other cases not specifically cited are inconsistent with today's holding, they are overruled.

This case is **REVERSED** and **REMANDED** for a **NEW TRIAL**.

LUMPKIN, P.J., JOHNSON, V.P.J., and LANE, J., concur.