(857 P.2d 1368)

No. 68,025

STATE OF KANSAS, *Appellee,* v. KEVIN V. FOUST, *Appellant.*

—

Opinion filed August 6, 1993.

*James L. Pinkerton,* of Wichita, for the appellant.

*David Lowden,* assistant district attorney, *Nola Foulston,* district attorney, and *Robert T. Stephan,* attorney general, for the appellee.

Before LARSON, P.J., LEWIS, J., and JOHN ANDERSON III, District Judge, assigned.

LEWIS, J.: The defendant appeals his jury conviction on a charge of rape. We reverse that conviction and remand for a new trial.

The facts are not particularly relevant to the issues on appeal. However, the record shows that the defendant and a friend were out driving in the defendant's Jeep. They ultimately met with V.C., who, although she knew neither of the two men, agreed to go "four-wheeling" with them.

From this point on, the evidence is sharply conflicting. According to V.C., the defendant drove to a rural area where he dragged her out of the Jeep and forcibly raped her. V.C. testified that, on the trip back to Wichita, the defendant stopped his Jeep, threw V.C. out, and drove away.

According to the defendant, V.C. suggested that she and the defendant have sex and consented to sexual relations. After the group started to drive back to Wichita, V.C. demanded that he stop the Jeep and let her out, telling him that she would walk home.

The jury resolved the conflict in the evidence in favor of the State. The defendant raises two issues on appeal. Further facts will be developed in the discussion of these issues.

## PEREMPTORY CHALLENGE OF JUROR

This issue involves juror Rhonda K. Lewis, a black woman. At voir dire, the defendant's attorney asked Lewis if she could look at the defendant and assume him to be innocent. Lewis stated that she could not do so because she had not heard any evidence. After some discussion back and forth between counsel for the defendant and the court, Lewis stated that she could assume that the defendant was innocent until proven guilty. At this point, Lewis was passed for cause.

The defendant struck Lewis with one of his peremptory challenges. Since Lewis was a member of a minority group, the trial court ruled that the defendant could not properly strike her. The following discussion took place concerning juror Lewis and why the defendant had exercised his peremptory challenge to strike her:

"MR. GREENO [attorney for the defendant]: My objection to this proceeding is noted in that document. When I asked her if she could look at Mr. Foust and assume his innocence, she said no, then the Court interrupted because the Court said he didn't think she understood all the questions and the Court talked about related matters for a point of time, then I turned around and asked her if she understood and she said yes. We talked about

whether or not she could assume Mr. Foust to be innocent as he sits here today. After that, her responses were somewhat equivocal.

"THE COURT: The statutory language is you are presumed to be innocent until—the test is until the contrary is proven.

"MR. GREENO: What I am saying is, I don't believe the state of the law is the juries can—I don't think that she understood exactly what was required in that assumption. I don't think that she will enforce that assumption, given the nature of her responses, the expressions on her face and the body language that she used in referring to my client. I think we should be allowed to pre-empt [sic] her clearly regardless of what the Court feels.

"THE COURT: Well, I think there has been no racial reason given and I find there is none and the quasi-peremptory challenge is overruled. While we are here, the golden rule question is not an appropriate question. Are you in the frame of mind you would want a juror to be in if you were on trial—of course, it's subject to several answers, but a person would have to make certain assumptions to enter into those answers, but it's been declared several times by courts that even though often given the golden rule to jurors, it is not appropriate. So when we come back from lunch, the state of the record is one juror has been excused, and one peremptory challenge has been refused.

"MR. GREENO: Your Honor, may I, for the record—

"THE COURT: And therefore you may exercise another challenge, pass it or whatever you choose to do. Maybe something will occur later in the transactions before the jury that will cast more light on this.

"MR. GREENO: Your Honor, may I briefly, for the record—

"THE COURT: Well, yes.

"MR. GREENO: Your Honor, just so the record is clear, prior to excusing the jury, the Court circulated a form which asked for my reasons for exercising the peremptory challenge as to the juror, Mrs. Lewis. I objected on that form. The Court's inquiry as to my basis for that peremptory—

"THE COURT: Mr. Greeno, you have already got that in the record. She has that in her possession.

"MR. GREENO: I haven't seen any form as to Mr. Burton, who is the person the State elected to exercise their peremptory.

"THE COURT: Maybe you misperceive what I understand the Supreme Court of the United States has said, so let's get that clear. That lady is a member of what is called an identifiable minority group. She is a black lady. The law says that in every case jurors have a right to serve and in most circumstances a person may not be removed unless there is a racially neutral reason. I found there was no racially neutral reason, and I declined to excuse her. That's my responsibility. I have to pass on that, whether by the State or the defense, and she is the only person so far who has been the subject matter of a peremptory challenge to which those rules apply.

"Now, if you find something different in the recent series of cases—

"MR. GREENO: I take exception to the Court's—

"THE COURT: I don't know why you have to take exception. You can take exception to the Supreme Court of the United States.

"MR. GREENO: I disagree with the Court's interpretation of the case.

"THE COURT: I am talking about a series of four cases. It's crystal clear when the Supreme Court of the United States says jurors have a Constitutional right to serve, it's a public proceeding and no one may be excused on account of their race or ethnic origin, that it means what it says. And I am astounded that any lawyer would question that the Judge would have to pass on that because those are the directions given by the Supreme Court of the United States and I think they are correct directions. Let's go to lunch."

Counsel for the defendant also reduced his reasons for excusing juror Lewis to writing. This writing is a part of the record, and it states:

"After discussion of the assumption of innocence with some of the other jurors—and after the court's instruction to the prospective jurors that they are to assume the Defendant (Kevin Foust) is not guilty at this time (before the evidence). The prospective juror Miss Lewis said she could not assume the Defendant was innocent as he (Mr. Foust) sits here today. This is before the evidence & before they are released to discuss the case. After further discussion, she said she could, however, her tone of voice, body actions, and expressions indicated her answer was equivocal & not exactly what is required by law. /s/ C. Jay Greeno"

The defendant raises two issues concerning the challenge of juror Lewis:

1. Does the doctrine of *Batson v. Kentucky* and *State v. Hood* apply to a criminal defendant as well as to the prosecution in a criminal case?
2. Did the trial court err in finding the defendant did not give a race neutral reason to support his challenge of juror Lewis?

### *Batson v. Kentucky*

In *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986), the Supreme Court of the United States held that the Equal Protection Clause prohibits the prosecution from using peremptory challenges to systematically strike black jurors. Under *Batson*, the defendant need only show that he is a member of a cognizable minority group and that the prosecution has used a peremptory challenge to remove a member of that group from the venire. The burden then shifts to the prosecutor to come forward with a neutral reason justifying the peremptory challenge.

The doctrine of *Batson* was applied to the State of Kansas by our Supreme Court in *State v. Hood,* 242 Kan. 115, 117, 744 P.2d 816 (1987).

The holdings in *Batson* and *Hood* applied only to peremptory challenges by the prosecution. The reasoning of *Batson* was extended to prohibit a racially motivated strike *by the prosecution* even when the defendant was not of the same race as the juror struck. *Powers v. Ohio,* 499 U.S. 400, 113 L. Ed. 2d 411, 111 S. Ct. 1364 (1991). The Court in *Powers v. Ohio* concluded that each individual juror had an equal protection right not to be excluded from a jury on the basis of race and that a criminal defendant, regardless of his race, has standing to raise the equal protection rights of the jury members.

In *Edmonson v. Leesville Concrete Co.,* 500 U.S. 614, 114 L. Ed. 2d 660, 111 S. Ct. 2077 (1991), the Supreme Court extended its holding in *Batson* to civil cases. The Court reasoned that, by allowing peremptory strikes, the government delegates an important governmental function to the parties, and, therefore, the exclusion of a juror from a jury on the basis of race would violate the juror's equal protection rights. The Court further reasoned that parties in a civil lawsuit had standing to raise the equal protection rights of the juror.

In this case, the question is whether the *Batson* doctrine applies to a defendant in a criminal case. The defendant argues that *Batson* does not apply and that he is not prohibited from exercising his peremptory strikes in any manner, including a racially motivated manner.

The Supreme Court of the United States, in the recent decision of *Georgia v. McCollum,* 505 U.S. ___, 120 L. Ed. 2d 33, 112 S. Ct. 2348 (1992), held that, pursuant to the rationale in *Batson,* a criminal defendant is prohibited from using peremptory challenges to purposely discriminate on the basis of race. The Court reasoned that the individual juror has an equal protection right not to be excluded from a jury on the basis of race and that a criminal defendant's use of peremptory challenges constituted state action under the principles of *Edmonson v. Leesville Concrete Co.* The Court then went on to hold that the State has standing to raise the juror's equal protection rights.

We adopt the rule applied in *Georgia v. McCollum* as the law in this state. We hold that a criminal defendant is prohibited from using peremptory challenges to systematically strike jurors on the basis of race. The Supreme Court of the United States, in *Griffith v. Kentucky,* 479 U.S. 314, 327-28, 93 L. Ed. 2d 649, 107 S. Ct. 708 (1987), held that a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases pending on direct review. The instant matter was pending at the time *Georgia v. McCollum* was decided. As a result, *Georgia v. McCollum* controls, and we hold that the trial court did not err in holding that the defendant could not use racial reasons to exercise a peremptory strike.

The next issue is whether the defendant in the instant matter articulated a race-neutral reason for striking juror Lewis.

### Race-Neutral Reasons

As is clear from that portion of the record quoted in this opinion, the defendant struck juror Lewis because of her statement that she could not assume the defendant innocent without evidence. Although she later recanted this position, counsel for the defendant made his decision based on her original answer, her body language, and the manner in which she answered the question. It appears to us to have been plain error for the trial court to conclude that the reasons given were not race neutral.

The analysis of the Supreme Court in *State v. Hood* established a procedure to be followed by the trial court in resolving the issue of whether an explanation is or is not race neutral:

"Once the defendant has made a prima facie showing of purposeful discrimination, the burden then shifts to the State to come forward with a neutral explanation for challenging black jurors. The explanation need not rise to the level justifying the exercise of a challenge for cause, but the prosecutor may not rebut a prima facie case of discrimination 'by stating merely that he challenged jurors of defendant's race on the assumption— or his intuitive judgment—that they would be partial to the defendant because of their shared race. Nor may the prosecutor rebut the prima facie case 'merely by denying that he had a discriminatory motive or "affirming his good faith in individual selections." *Batson v. Kentucky,* 476 U.S. at 97-98." *State v. Hood,* 242 Kan. at 120-21.

We conclude that the same rules apply to a criminal defendant. The analysis in *State v. Hood* is applicable to this matter, and

the references to the burden of the State become the defendant's burden.

The trial court did not follow the required procedure in determining whether defendant's reasons for exercising his challenge were race neutral. The State was required to make a prima facie showing of purposeful discrimination. Indeed, there is nothing in the record to indicate that the State even objected to defendant's peremptory strike of juror Lewis. The failure of the trial court to place the initial burden on the State is reversible error. However, that fact is not of great significance in the instant matter. As will become clear, we reverse and remand for several reasons, and the failure to follow the proper procedure in determining the propriety of the challenge to juror Lewis is only one of those reasons.

We hold that the trial court abused its discretion in concluding that the defendant's reasons for striking juror Lewis were not race neutral. In *Smith v. Deppish,* 248 Kan. 217, 807 P.2d 144 (1991), the Supreme Court upheld the trial court's finding that the reasons given for striking a juror were race neutral and commented:

"Here, the State relied not only on its observance of Seldon's body language, but also considered her response to the jury questionnaire that she did not want to be part of the jury process. Neither Smith nor the record provides information that any of the other jurors had given a similar reply in their questionnaire. Based on the record, the State offered the trial court a sufficient race neutral explanation to exclude Seldon from the jury." 248 Kan. at 229.

We view *Deppish* as a mirror image of the case under consideration. In this case, the defendant relied not only on his observations of the body language of juror Lewis but also on her response to the questions on voir dire. The record does not show that other jurors gave similar responses on voir dire or that non-minority jurors were not stricken under similar circumstances. Indeed, we have reviewed the record and apparently only juror Lewis indicated that she could not initially presume the defendant to be innocent without evidence. There is nothing in the record to indicate that counsel for the defendant struck juror Lewis for race-related reasons. The record shows she was stricken because of her answers on voir dire and counsel's concerns over her body

language observed in response to those questions. These are the precise reasons why we allow peremptory strikes. To hold that the reasons given by the defendant's counsel in the instant matter were not race neutral would abrogate any peremptory challenge of a minority juror regardless of the reasons given.

Counsel for criminal defendants are allowed to use peremptory challenges to strike jurors for any reason which is race neutral. The proper use of the peremptory challenge is vital to the conduct of a criminal defendant's defense. In the absence of clear evidence indicating the reasons given for a challenge are in bad faith, the challenge should be sustained if the reasons are racially neutral. We expect attorneys to utilize all of their skills and professional judgment in representing criminal defendants. In the matter now under consideration, counsel for the defendant was not permitted to do so. The answers by juror Lewis to questions on voir dire made her a prime candidate for a peremptory strike. We conclude that the defendant was deprived of a peremptory challenge secured to him by the law of this state. Although it may seem minimal, the deprivation of even one valid peremptory challenge is prejudicial to a defendant and may skew the jury process. We consider it to be reversible error.

## COMMENT ON POST-*MIRANDA* SILENCE

The defendant next argues that the trial court erred by permitting the prosecution to comment on defendant's failure to go to the police and tell them his version of what took place on the Jeep trip. It is the position of the defendant that these remarks violated his constitutional right to remain silent.

There were two incidents during the trial in which this issue was raised. The first incident occurred during the State's cross-examination of defendant. After defendant admitted that he had lied to the police in his first statement, the prosecutor twice asked him why he did not later come forward and clear up the matter. During closing arguments, the State again commented on defendant's failure to go to the police and tell them the truth.

The State argues that the defendant failed to make a contemporaneous objection to these comments and questions and cannot now raise them on appeal. Our review of the record, however, shows that the defendant did object to the prosecutor's statement

during closing arguments. It is further clear that the defendant attempted to make an objection to the questions during cross-examination but was not allowed to do so by the trial court. We conclude from our examination of the record that the defendant adequately preserved his right to appeal on these issues.

It is constitutionally impermissible for a prosecutor to impeach a criminal defendant's credibility by cross-examining him about his post-arrest and post-*Miranda* silence. *State v. Massey,* 247 Kan. 79, 81, 795 P.2d 344 (1990). It is the position of the defendant that the prosecution's questions on cross-examination and comments on closing argument violated his post-arrest and post-*Miranda* rights to silence.

The State argues that by telling the police a false story, the defendant waived his right to remain silent under *State v. Singleton,* 223 Kan. 559, 575 P.2d 540 (1978). In *Singleton,* the court held that when a defendant voluntarily answers questions put to him by the authorities, he waives his right to remain silent and is subject to cross-examination as to any variance between the statements given and the testimony at court as well as for his failure to give full answers to the questions. 223 Kan. at 561.

We do not believe that *Singleton* applies to the issue shown on this appeal. The decision in *Singleton* came about because the defendant in that case had previously given a statement to the police. As a result, the Supreme Court held that the defendant was subject to cross-examination as to why his story on the witness stand was different from the story he told the police. He was also subject to questions about why he did not tell the truth to the officers in question. In this case, the prosecutor's questions and comments were not based on a prior version of the events which had been given to the police by the defendant, but rather concerned the defendant's failure to go to the police two days later and tell them the true story. This is an entirely different situation than that presented in *Singleton.* We hold that *Singleton* does not apply in the instant matter.

We conclude from our review of the record that the prosecution's questions and its arguments to the jury were an attempt to use the defendant's post-arrest and post-*Miranda* silence to raise an inference that the story he testified to at trial was false. We hold that this was a constitutionally impermissible attempt

to impeach the defendant by referring to his post-arrest and post-*Miranda* silence. This is an error of constitutional magnitude and requires that we reverse and remand the matter for a new trial.

Reversed and remanded for a new trial consistent with this opinion.