632 So.2d 861 (1994)
STATE of Louisiana, Appellee,
v.
Antonio R. WILSON, Appellant.
Nos. 25,775-KA, 25,776-KA.
Court of Appeal of Louisiana, Second Circuit.
February 23, 1994.
*862 W. Charles Brown, Public Defender, Mansfield, for appellant.
Don M. Burkett, Dist. Atty., Mansfield, and Richard Ieyoub, Atty. Gen., for appellee.
Before MARVIN, HIGHTOWER and BROWN, JJ.
BROWN, Judge.
A jury found defendant, Antonio R. Wilson, guilty of second degree kidnapping, a violation of LSA-R.S. 14:44.1(A)(5). Wilson was thereafter sentenced, as a second felony offender, to serve 30 years at hard labor without benefit of parole, probation or suspension of sentence. Issues presented by this appeal question the reliability of a pre-trial identification process and the prosecutor's right to object to the use of peremptory challenges by an African-American defendant to strike white jurors.

FACTS
On the afternoon of June 24, 1991, defendant went to the business office of Moody Enterprises, Inc., a timber and logging company. Linda Laffitte was the only person in the office at the time. Defendant asked for Mr. Moody's wife and was told that Mr. Moody was no longer married. Defendant then told Ms. Laffitte that his name was Jerry Thomas and that he was there to pick up a tire jack he lent to Mr. Moody. While Ms. Laffitte searched for the borrowed tire jack, defendant picked up a screwdriver, put it to her throat and threatened to harm her unless she did what he requested. Ms. Laffitte was forced by defendant to chauffeur *863 him around in her automobile. After approximately 2 hours of captivity, the victim was released.

DISCUSSION

Assignment No. 1
According to defendant, the trial court erred in denying his motion to suppress his pre-trial identification by the victim from a photographic line-up.
Shortly after being released from captivity, Ms. Laffitte described her assailant to several police officers. One of the officers concluded from the description that the perpetrator was defendant. A line-up consisting of five photographs was shown to the victim, who positively identified defendant as her abductor.
To suppress a pre-trial identification, a defendant must first show a suggestive procedure and, secondly, demonstrate the likelihood of misidentification by the witness. State v. Guillot, 353 So.2d 1005 (La.1977), writ denied, 367 So.2d 864 (La.1979); State v. Davis, 550 So.2d 774 (La.App. 2d Cir.1989).
Photographs employed in a line-up are suggestive if they display the defendant so singularly that the witness's attention is unduly focused on the defendant. State v. Smith, 430 So.2d 31 (La.1983); State v. Robinson, 386 So.2d 1374 (La.1980); State v. Tucker, 591 So.2d 1208 (La.App. 2d Cir. 1991), writ denied, 594 So.2d 1317 (La.1992). It is not required that each person whose photograph is used in the line-up have the exact physical characteristics as the defendant. What is required is sufficient resemblance to reasonably test identification. State v. Smith, supra; State v. Guillot, supra.
The photographs used in the line-up depict men with similar facial hair, facial features, skin color and complexion. There are no distinguishing marks on any of the pictures and they were not displayed in such a way that the victim's attention would be unduly focused on the defendant. Furthermore, the victim was with her captor for over two hours. Within minutes of her release, she gave an accurate physical description of the defendant to the police. Several hours later, when she viewed the photographic line-up, she immediately identified defendant as the person who kidnapped her. After analyzing the facts, the trial court concluded that the pre-trial identification of defendant by the victim was reliable. The record clearly supports this determination by the trial court.
We find no merit to this assignment of error.

Assignment No. 2
We do find error, however, in the trial court's refusal to allow defendant to strike a prospective white juror by use of a peremptory challenge. Prospective jurors were examined in panels of six. Four African-Americans and two whites made up the first panel. Defendant peremptorily challenged the two white members of this first panel. The state raised a Batson objection to these challenges, claiming that defendant accepted all jurors of one particular race while excusing all jurors of another race. The state's objection was sustained by the trial court.
The Supreme Court in Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), held that the Equal Protection Clause of the U.S. Constitution prohibits the state from challenging potential jurors solely on account of their race. Batson has been codified by the Louisiana legislature in LSA-C.Cr.P. Art. 795(C). In Georgia v. McCollum, 505 U.S. ___, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992), and Georgia v. Carr, ___ U.S. ___, 113 S.Ct. 30, 121 L.Ed.2d 3 (1992), the Supreme Court extended Batson to hold that a criminal defendant may not violate the equal protection rights of venirepersons solely because of race. To allow prospective jurors to be excluded because of group bias, whether at the hands of the state or the defense, would undermine public confidence in criminal justice. See also, State v. Knox, 609 So.2d 803 (La.1992).
Whenever a prosecutor or defense counsel makes a Batson objection, he/she is required to establish a prima facie case of purposeful discrimination. Such a prima facie case is shown when the pertinent circumstances raise an inference that the defense counsel or *864 prosecutor used peremptory challenges to exclude venire members of a cognizable racial group from serving on the jury solely because of race. State v. Rose, 606 So.2d 845 (La.App. 2d Cir.1992) (citations omitted).
Once a showing of prima facie discrimination has been made, the burden shifts to the one seeking to strike the prospective juror to come forward with a race-neutral explanation for the challenge. While that explanation need not rise to the level of a challenge for cause, it is insufficient to merely state an assumption or intuitive judgment that the excused venireperson would not be impartial because of his/her racial identity. The explanation must be clear, racially neutral, reasonably specific and related to the case at bar. State v. Rose, 606 So.2d at 850 (citations omitted).
In the instant case, the victim was white and defendant was African-American. Defendant had 12 peremptory challenges and struck both white prospective jurors in the first panel. By seeking reasons from defense counsel for the challenges, the trial court implicitly found a prima facie showing of discrimination. The burden then shifted to defendant to come forward with racially neutral explanations for the challenges of Lilliam Lagars and James McLamb.
Defendant offered no explanation for the peremptory challenge of Lillian Lagars. Thus, the trial court correctly sustained the state's Batson objection to defendant's attempt to peremptorily excuse this prospective juror.
Defense counsel explained that he struck James McLamb because McLamb's father was an auxiliary deputy sheriff and a Justice of the Peace who had dealings with and served with some of the officers that were scheduled to testify in the case. McLamb also stated that he had met the officers who were listed as witnesses for the state and that he knew the district attorney, though he was not a close personal friend.
McLamb further explained that he did not discuss law enforcement on a regular basis with his father, nor did his father discuss his experiences as a deputy sheriff with him. McLamb did not know defendant and had heard nothing about the case. He affirmed that his father's position would have no influence on his decision as a juror.
According to defense counsel, the above circumstances raised questions in his mind concerning McLamb's objectivity to determine and weigh evidence to be given by law officers. Although not brought to the trial court's attention, defense counsel noted in his brief that McLamb's father was the Justice of the Peace who signed the warrant that was issued for defendant's arrest.
Although personal connections to and relationships with law enforcement personnel do not, by themselves, disqualify prospective jurors for cause, such associations and relationships are subject to careful scrutiny. State v. Alexander, 620 So.2d 1166 (La.1993); State v. Ford, 489 So.2d 1250 (La.1986), vacated on other grounds, 479 U.S. 1077, 107 S.Ct. 1272, 94 L.Ed.2d 133 (1987), on remand, 503 So.2d 1009 (La.1987). The question is whether the prospective juror could assess the credibility of each witness independently of his relationship with law enforcement. State v. Carlos, 618 So.2d 933 (La.App. 1st Cir.1993), writ denied, 623 So.2d 1305 (La.1993). If bias or prejudice may be reasonably attributed to the relationship or association, the juror should be excused for cause. State v. Alexander, supra. In the context of peremptory challenges, however, potential partiality because of such relationship is a sufficient racially neutral reason for a peremptory challenge. State v. Rose, supra; State v. Crandell, 604 So.2d 123 (La. App. 2d Cir.1992).
In this case, defense counsel's explanation demonstrated circumstances which arguably might have adversely impacted McLamb's ability to impartially consider defendant's case. Defense counsel's explanation was clear, race-neutral, reasonably specific and related to the case at bar. The trial court's contrary determination was not supported by the record. Thus, defendant met his burden of coming forward with a racially neutral explanation for exercising his peremptory strike against McLamb.
There is no federal constitutional right to peremptory challenges. Louisiana's constitution *865 provides for peremptory challenges whose number shall be fixed by law. The right to peremptory strikes is denied or impaired only if the defendant does not receive that which state law provides. Ross v. Oklahoma, 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988).
We find that defendant's exercise of his peremptory challenge with respect to McLamb did not violate Batson. Thus, by sustaining the prosecutor's Batson objection to defendant's peremptory strike of McLamb, the trial court effectively denied defendant of his right to exercise this challenge. LSA-Const. Art. 1, § 17 (1974); LSA-C.Cr.P. Art. 799.
We do not reach defendant's other assignments of error.

CONCLUSION
For the reasons set forth above, defendant's conviction is reversed, his sentence is vacated and the case is remanded to the trial court for a new trial.
REVERSED, VACATED and REMANDED.