Ted EZELL, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–94–712.

Court of Criminal Appeals of Oklahoma.

Dec. 8, 1995.

Steve Barnes, Assistant Public Defender, Tulsa, for Defendant at trial.

Sarah Day Smith, Assistant District Attorney, Tulsa, for the State at trial.

Barry L. Derryberry, Assistant Tulsa County Public Defender, Tulsa, for Appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma and Elaine K. Sander, Assistant Attorney General, Oklahoma City, for Appellee on appeal.

*SUMMARY OPINION*

CHAPEL, Vice Presiding Judge:

Ted Ezell was tried by jury in the District Court of Tulsa County, Case No. CRF–88–3173. He was convicted of Count I—First Degree Rape in violation of 21 O.S.1991, § 1114, and Count II—Lewd Molestation in violation of 21 O.S.1991, § 1123(4). In accordance with the jury's recommendation, the Honorable B.R. Beasley sentenced Ezell to two hundred (200) years imprisonment for Count I and twenty (20) years imprisonment

for Count II, to be served consecutively. Ezell raises six propositions of error in support of his appeal.

After thorough consideration of the entire record before us on appeal including the original record, transcripts, briefs (including all six of Ezell's propositions of error) and exhibits of the parties, we have determined that neither reversal nor modification is warranted under the law and the evidence.[1] Therefore Ezell's Judgment and Sentence is affirmed. Proposition I, however, presents an issue of first impression for this Court. Ezell correctly claims error occurred when he successfully refused to give a race-neutral reason for exercising a peremptory challenge against an African–American juror. Below we discuss the nature of the error, determine the appropriate remedies at trial and on appeal, and decline to grant Ezell relief.

During voir dire, one African–American juror was excused for cause with no objection. The State excused two African–American jurors with peremptory challenges, giving race-neutral reasons for each challenge. Ezell does not contest those rulings on appeal. Ezell, who is African–American, used his fourth peremptory challenge to excuse an African–American male juror. The State objected, and the trial court told Ezell to go ahead and state his reasons for the challenge. Ezell insisted that he need not give a race-neutral reason. The trial court did not re- quire Ezell to articulate a racially neutral reason for the challenge and excused the juror. Ezell and the trial court each erred.

 *Batson v. Kentucky*[2] prohibits the State from exercising peremptory challenges in a racially discriminatory manner. *Powers v. Ohio*[3] held that the defendant's own race is irrelevant to his standing to raise a *Batson* challenge, based on each prospective juror's constitutional right not to be excluded from a jury solely on the basis of race under the Equal Protection Clause of the Fourteenth Amendment. *Powers* determined that the defendant is the appropriate third party to raise the equal protection claims of excluded jurors by challenging the State's improper use of peremptories.[4] *J.E.B. v. Alabama*[5] extended the *Batson* rationale to gender discrimination, also based on the necessity of an equal opportunity to participate in the fair administration of justice. *Edmonson v. Leesville Concrete Co.*[6] expanded these principles to the civil realm and held that private litigants in a civil case engage in state action when picking a jury and cannot exercise their peremptory challenges in a racially discriminatory manner.

 Finally, *Georgia v. McCollum*[7] ensures *Batson* will apply to all parties by prohibiting criminal defendants from using peremptory challenges on the basis of race. Under *McCollum* a defendant is subject to the three-part test outlined in *Batson:* if the

---

1. In Proposition IV Ezell alleges that prosecutorial misconduct denied him a fair trial. The prosecutor, Sarah Smith, committed error throughout the course of the trial. The State's arguments otherwise must be without merit since the trial court sustained Ezell's objection to every instance of error, almost always admonished the jury not to consider the erroneous statement or evidence, and often admonished Smith as well. Careful review of the record shows that the cumulative misconduct did not have a grossly unfair effect on the jury, and we do not grant relief on these grounds. However, we are compelled to chastise the prosecutor for her conduct. Smith was also the prosecutor in *Cheney v. State*, 909 P.2d 74 (Okl.Cr.1995). In that case she also flouted the law and ignored the direct and explicit rulings of the trial court (*Cheney*, 909 P.2d at 88). These cases suggest a pattern. Smith appears to be playing "chicken" with the trial court and this Court. With a less vigilant trial judge Smith's actions could very well have resulted in reversible error. We hope this admonishment may forestall reversible error in a future case.

2. 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). *This Court recently reaffirmed the constitutionality of 22 O.S.1981, § 654, granting peremptory challenges in a criminal trial. Moore v. State*, 900 P.2d 996 (Okl.Cr.1995).

3. 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991).

4. *Powers*, 499 U.S. at 415; 111 S.Ct. at 1373.

5. ⎯ U.S. ⎯⎯, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994).

6. 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991).

7. 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992).

State establishes a prima facie case that a juror is being challenged on the basis of race,[8] the trial court shall require the defendant to give a race-neutral reason for the challenge, and must then determine whether the State has established purposeful discrimination.[9] *McCollum* held that a criminal defendant, although otherwise in an adversarial relationship, is an agent of the State for the particular purpose of exercising a peremptory challenge when picking a jury.[10] Relying on *Powers*, *McCollum* determined that the State is the appropriate third party to assert the excluded jurors' Equal Protection rights.[11] Thus, if a defendant exercises a peremptory challenge, the State may assert an Equal Protection claim on behalf of the excluded juror. If the State establishes a prima facie case that the challenge was exercised on the basis of race, the defendant must articulate a race-neutral explanation for the challenge. Here, the State made a prima facie case that Ezell used his fourth challenge on the basis of race, and the trial court asked Ezell for a race-neutral reason. Ezell refused to give any reason at all, and the trial court took no further action. This was error under *McCollum*.

■ This Court held in *Black v. State*[12] that a defendant may waive a *Batson* claim if no objection is raised at the time of the error or before the jury is sworn. However, common sense demonstrates that *Black* cannot apply to *McCollum* situations. If the State has raised a *McCollum* claim in response to a defense peremptory challenge, the issue is preserved for appellate review. The defendant is the one committing the error. He cannot be faulted for failing to object to it as well. The State preserved this issue for review when it objected to Ezell's use of his fourth peremptory challenge, and Ezell has not waived the issue by failing to object to his own conduct at trial.

The analysis in *McCollum* ends with the determination that *Batson* applies to criminal defendants, and subsequent comment has focused on whether this determination is correct and whether it heralds the ultimate demise of the peremptory challenge.[13] These interesting but academic discussions fail to reach the issue before us. This Court must determine the practical consequences of *McCollum:* what are the remedies available at trial and on appeal if a *McCollum* error occurs? Neither this Court nor the Tenth Circuit has addressed this issue. We have reviewed decisions in other states and federal circuits, as well as *Batson* and its progeny, to assist us in determining the remedies available in Oklahoma courts.

■ This Court has not considered the appropriate remedy at trial for a *Batson/McCollum* violation. The Supreme Court suggested two potential remedies upon a finding of discrimination but specifically refused to suggest how trial courts might implement the *Batson* requirements.[14] Several other jurisdictions have ruled on the specific issue of appropriate trial remedies for a *McCollum* violation. Following *Batson,*

8. The *Powers* decision established that defendants no longer need be members of a cognizable racial group.

9. *McCollum,* 505 U.S. at 59, 112 S.Ct. at 2359; *Batson,* 476 U.S. at 96–98, 106 S.Ct. at 1723–24.

10. *McCollum,* 505 U.S. at 55–56, 112 S.Ct. at 2357. This finding was necessary because the Equal Protection Clause applies only to state action. *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 172, 92 S.Ct. 1965, 1971, 32 L.Ed.2d 627 (1972).

11. *McCollum,* 505 U.S. at 55–56, 112 S.Ct. at 2357.

12. *Black v. State,* 871 P.2d 35, 42 (Okl.Cr.1994). *Black* cites *McCollum* in its discussion of defendant's waiver of a *Batson* claim, but does not address the problem posed where the State responds to a defendant's peremptory challenge.

13. *See, e.g., The Equal Protection Clause of the Fourteenth Amendment Prohibits a Criminal Defendant's Exercise of Racially Discriminatory Peremptory Challenges,* 23 Seton Hall L.Rev. 1160 (1993); *The Discriminatory Effect of the "Color–Blind" Jury—Georgia v. McCollum,* 505 U.S. 42, 112 S.Ct. 2348 (1992), 16 Hamline L.Rev. 975 (1993); *Limiting a Defendant's Peremptory Challenges: Georgia v. McCollum and the Problematic Extension of Equal Protection,* 42 Catholic U.L.Rev. 389 (1993).

14. *Batson,* 476 U.S. at 99, n. 24, 106 S.Ct. at 1725, n. 24.

these remedies fall into two broad categories. After a trial court finds that a defendant has not given a race- or gender-neutral explanation for a peremptory challenge, some courts allow or require the trial court to quash and reseat the entire venire.[15] The trial court may then reseat the venire[16] or seat an entirely new panel.[17] The majority of jurisdictions simply permit the trial court to disallow the peremptory challenge and seat the challenged juror.[18] Massachusetts and Texas allow a trial court to pursue either of these remedies as the individual case requires.[19] We adopt this flexible approach as the best solution. We interpret *Batson* as suggesting that either remedy may be appropriate depending on the particular circumstances at trial. If a *Batson/McCollum* claim is raised at the time a juror is challenged, it may be feasible to reinstate the juror. Sometimes several jurors must be challenged for a pattern to emerge. If the parties have waited until several challenges have been exercised to make their record, the trial court may need to quash and reseat the entire panel, prohibiting each party from again attempting to strike jurors for whom no race or gender-neutral reason was provided in the first instance. Ezell refused to give a race-neutral reason when he challenged an African–American juror. The trial court should have disallowed the peremptory challenge and seated the juror.

Reversal is the only appellate remedy for a *Batson* violation.[20] This Court will remand a case where appropriate for an evidentiary hearing to determine whether a *Batson* violation occurred.[21] If we find error, we will reverse the conviction and remand for a new trial.[22] *McCollum* adopts the *Batson* appellate remedy—i.e., an appellate court should remand if necessary to determine whether an equal protection violation occurred, and, if so, reverse. This traditional remedy of reversal has two unpalatable consequences when applied to *McCollum* violations: 1) it discourages prosecutors from raising meritorious claims of error in order to ensure they are not preserved for appellate review; and 2) it allows a defendant to

**15.** *See, e.g., State v. Franklin*, 456 S.E.2d 357 (S.C.1995); *U.S. v. Bentley–Smith*, 2 F.3d 1368 (5th Cir.1993).

**16.** *Bentley–Smith*, 2 F.3d at 1372; *Franklin*, 456 S.E.2d at 359 (*citing State v. Jones*, 293 S.C. 54, 358 S.E.2d 701 (1987) (*Batson* violation requires jury be quashed and selection begin de novo)). In each case, the defendant was prohibited during the second voir dire from striking jurors he had unsuccessfully attempted to strike the first time. *Bentley–Smith*, 2 F.3d at 1372; *Franklin*, 456 S.E.2d at 360.

**17.** The Court of Special Appeals of Maryland initially held it was proper for a trial court to quash the entire panel and seat a new panel. *Brogden v. State*, 649 A.2d 1196 (Md.App.1994); *Gilchrist v. State*, 627 A.2d 44 (Md.App.1993). Subsequently the same court treated the issue as one of first impression and held the trial court should disallow the peremptory strike and reseat the individual juror. *Jones v. State*, 105 Md.App. 257, 659 A.2d 361 (1995).

**18.** *See, e.g., United States v. Sowa*, 34 F.3d 447 (7th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 915, 130 L.Ed.2d 796 (1995); *Maxwell v. State*, 620 So.2d 93 (Ala.Cr.App.1992), *cert. denied*, No. CR–91–1448 (Ala. April 23, 1993); *McKibbons v. State*, 216 Ga.App. 389, 455 S.E.2d 293 (1995), *cert. denied*, No. A94A2796, (Ga. May 25, 1995); *Currin v. State*, 638 N.E.2d 1319 (Ind. App. 5 Dist.1994); *State v. Moore*, 640 So.2d 561 (La.App. 3 Cir.1994), *writ denied*, 651 So.2d 858

(La.1995); *Jones v. State*, 105 Md.App. 257, 659 A.2d 361 (1995); *Griffin v. State*, 610 So.2d 354 (Miss.1992); *State v. Gray*, 887 S.W.2d 369 (Mo. 1994), *cert. denied, Gray v. Missouri*, —— U.S. ——, 115 S.Ct. 1414, 131 L.Ed.2d 299 (1995); *People v. Stiff*, 206 A.D.2d 235, 620 N.Y.S.2d 87 (1994), *appeal denied*, 85 N.Y.2d 867, 648 N.E.2d 806, 624 N.Y.S.2d 386 (1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 107, 133 L.Ed.2d 60 (1995).

**19.** *Commonwealth v. Fruchtman*, 418 Mass. 8, 633 N.E.2d 369, *cert. denied, Fruchtman v. Massachusetts*, —— U.S. ——, 115 S.Ct. 366, 130 L.Ed.2d 319 (1994); *Commonwealth v. Reid*, 384 Mass. 247, 424 N.E.2d 495 (1981); *State ex rel. Curry v. Bowman*, 885 S.W.2d 421 (Tex.Cr.App. 1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 184, 130 L.Ed.2d 118 (1994).

**20.** *Batson*, 476 U.S. at 100, 106 S.Ct. at 1725; *Powers*, 499 U.S. at 416, 111 S.Ct. at 1373–74.

**21.** *See, e.g., Guy v. State*, 778 P.2d 470, 476 (Okl.Cr.1989); *Brown v. State*, 762 P.2d 959, 962 (Okl.Cr.1988); *Johnson v. State*, 761 P.2d 484, 490 (Okl.Cr.1988); *Johnson v. State*, 731 P.2d 993, 1004 (Okl.Cr.), *cert. denied*, 484 U.S. 878, 108 S.Ct. 35, 98 L.Ed.2d 167 (1987).

**22.** *Green v. State*, 862 P.2d 1271 (Okl.Cr.1993); *Manuel v. State*, 751 P.2d 764 (Okl.Cr.1988), *overruled on other grounds, Green*, 862 P.2d at 1273.

benefit on appeal from error he committed at trial. We find it difficult to believe that the *McCollum* Court intended these results. Criminal jurisprudence simply cannot allow a defendant to benefit from error he creates. In an era where jury selection and the entire structure of criminal trials is being questioned on grounds of fairness and effectiveness, this result will undermine respect for the criminal justice system as surely as the practice of discriminating against jurors on the basis of race.

Other jurisdictions have recognized this dilemma. Several jurisdictions have indeed reversed and remanded cases where a trial court erred in deciding a *McCollum* issue.[23] We are persuaded by the reasoning of the Alabama Court of Criminal Appeals, which has declined to give relief to a defendant who improperly strikes jurors in a racially discriminatory manner.[24] Alabama emphasized the principle that a party may not profit on appeal from his own misconduct.[25]

■ This Court also refuses to countenance relief for invited error.[26] Ezell should not have refused to give a race-neutral reason when he attempted to excuse an African–American juror with a peremptory challenge. The trial court erred when it took no action on Ezell's refusal. However, Ezell got what he wanted—that juror was excused. To reverse on the basis of this double error would be to hold that two wrongs make a right. This Court refuses to twice benefit Ezell by reversing his conviction on the basis of his own voluntary error.

In summary, the State established a prima facie case that Ezell was attempting to use a peremptory challenge in a racially discriminatory manner. Ezell erroneously refused to give a racially neutral explanation for the challenge. The trial court erred in failing to take action after this refusal. As a result, Ezell got the jury he wanted. This Court will not grant him further relief. Ezell's Proposition I is denied.

## DECISION

The Judgment and Sentence of the trial court is **AFFIRMED.**

JOHNSON, P.J., LUMPKIN and LANE, JJ., concur.

STRUBHAR, J., concurs in result.

LUMPKIN, Judge, concurring:

I concur in the Court's decision as a proper application of stare decisis. However, the facts of this case point out an almost untenable application of the United States Supreme Court jurisprudence regarding a juror's right to serve rather than the parties' right to select a jury to try the case. It is an example of reaching out and embracing a novel legal idea which in practice paints the Court into the proverbial corner. The problem is the paint never dries to allow the painter to leave the room.

---

**23.** *State v. Wilson,* 632 So.2d 861 (La.App. 2 Cir.1994); *State v. Foust,* 857 P.2d 1368 (Kan. App.1993); *State v. Knox,* 609 So.2d 803 (La. 1992). *See also Gilchrist v. State,* 97 Md.App. 55, 627 A.2d 44, 55 (1993), *cert. granted,* 332 Md. 741, 633 A.2d 102 (1993) (noting that *McCollum* applies same remedy to defense as to the prosecution).

**24.** *Owes v. State,* 638 So.2d 1383 (Ala.Cr.App. 1993); *Rowe v. State,* 625 So.2d 1210 (Ala.Cr. App.1993).

**25.** *Owes,* 638 So.2d at 1385; *Rowe,* 625 So.2d at 1213.

**26.** *See, e.g., Allen v. State,* 871 P.2d 79, 95 (Okl. Cr.), *cert. denied,* —— U.S. ——, 115 S.Ct. 370, 130 L.Ed.2d 322 (1994); *Harris v. State,* 841 P.2d 597, 602 (Okl.Cr.1992).