# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs April 1, 2003

## STATE OF TENNESSEE v. CALVIN SCOTT

**Appeal from the Criminal Court for Shelby County**
**No. 99-03993, 94, 95, 96, 97     J. C. McLin, Judge**

---

**No. W2002-01324-CCA-R3-CD  - Filed July 8, 2003**

---

The Appellant, Calvin Scott, was found guilty by a Shelby County jury of aggravated robbery, two counts of especially aggravated robbery, and two counts of first degree murder. The trial court sentenced Scott to an effective sentence of life plus twenty-two years. In this appeal as of right, Scott raises the following issues for our review: (1) whether the State asserted sufficient race-neutral explanations to support its exercise of peremptory challenges against four African-American jurors; and (2) whether the trial court, after concluding that the State's exercise of a peremptory challenge was improper, should have dismissed the entire panel rather than reseating the juror. We conclude that the State's use of its peremptory challenges was proper, and the trial court did not err by reseating the challenged juror. Accordingly, the judgment of the trial court is affirmed.

### Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed.

DAVID G. HAYES, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and THOMAS T. WOODALL, J., joined.

Robert Wilson Jones, Shelby County Public Defender; W. Mark Ward, Assistant Shelby County Public Defender, Memphis, Tennessee, for the Appellant, Calvin Scott.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Renee W. Turner, Assistant Attorney General; William L. Gibbons, District Attorney General; and Glen Baity, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

Although the evidence supporting the Appellant's conviction is not challenged on appeal, the circumstances leading to the convictions are briefly recounted as follows. On January 22, 1999, shortly after 3:00 p.m., the Appellant, then eighteen years old, and James Kneeland, armed with

pistols, entered Progressive Wheels, a wholesale custom wheel and tire business located in Memphis. Brian Petty, the manager of the business, John Paul Young, an employee, and Allan Bozarth were inside the business. The men were ordered to lay down on the floor, and their feet and hands were bound with duct tape. The robbers demanded to know where the money was located, and the Appellant asked about a safe. The victims informed the robbers that there was money in a desk drawer, but there was no safe. The Appellant took "three, four hundred dollars" out of Petty's pocket. Then, one of the robbers shot Bozart and Young in the head execution-style, and both men died as a result of their wounds. Petty was left unharmed and identified the Appellant at trial. Furthermore, after the Appellant was developed as a suspect, he voluntarily gave a statement to the police, in which he admitted that he shot the two victims and that he took their wallets and money. According to the Appellant's statement, he committed the acts under duress from a drug dealer, who promised to pay the Appellant a large sum of money and spare his life.

## ANALYSIS

During voir dire of the prospective jurors, the State exercised five peremptory challenges against four African-American females and one African-American male.[1] While it is unclear from the record, the State and the Appellant agree that, during the first round of challenges, the State struck Jurors Noella Pazara and Alma Brown. Jurors Teresa Hyman, Lester Harmon, and Tracy Price were challenged by the State during its second submission of peremptory challenges and, during the third round of challenges, the State removed Juror Francine Sledge. All five African-Americans were members of the venire during the first round of challenges. Defense counsel objected to the jurors' removal as being a possible violation of *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S. Ct. 1712, 1719 (1986) (holding that peremptory challenges may not be exercised in a discriminatory manner). The trial court concluded that the State's reasons in exercising peremptory challenges against four of the African-Americans were sufficiently race-neutral to permit exclusion. However, the trial court concluded that the basis for challenging Tracy Price was not sufficient and ordered her reinstated to the venire. The Appellant, an African-American, disputes the trial court's ruling, arguing that:

(1) Challenging the jurors on back strikes seemed to raise a specter that the reasons were not legitimate, but racially motivated;

---

[1] We note that the Appellant also challenges the removal of one Caucasian female, Noella Pazara. The prosecutor attempted to remove Pazara for cause; however, this request was denied. Ultimately, the prosecutor used the State's first peremptory challenge to remove Pazara from the venire. He explained that she was excused "because of her equivocal answers about whether or not she could accept the life without parole." While *Batson* is not limited to the exclusion of historically oppressed minorities, it does not appear that the Appellant argued that Pazara was challenged solely on account of her race. Accordingly, *Batson* does not apply to the exclusion of Pazara from the venire. Even if *Batson* did apply to the exclusion of Pazara, the prosecutor's explanation was sufficiently race-neutral to withstand a *Batson* challenge.

(2) The trial judge failed to analyze the *Batson* challenge under the three-step process required and failed to follow the mandate of the Tennessee Supreme Court by articulating specific findings of fact as to each step; and

(3) By rejecting the prosecutor's race neutral reason for excluding the one prospective black juror, the trial judge found that the prosecution had exercised its peremptory challenges in an intentionally discriminatory manner. As such, the proper remedy would have been to dismiss the venire and select a new jury from a panel not previously associated with the case.

The United States Supreme Court has consistently recognized that racially-based juror exclusions affect and injure the integrity of the justice system. *See Woodson v. Porter Brown Limestone Co.*, 916 S.W.2d 896, 902 (Tenn. 1996) (citation omitted). Accordingly, in *Batson*, 476 U.S. at 89, 106 S. Ct. at 1719, the Court held that the equal protection clause of the Fourteenth Amendment prevents a prosecutor from using peremptory strikes to challenge potential jurors "solely on account of their race."

*Batson* provides a three step process for the evaluation of racial discrimination claims in jury selection. First, the defendant must make a *prima facie* showing that the prosecutor has exercised peremptory challenges on the basis of race. *Purkett v. Elem*, 514 U.S. 765, 767, 115 S. Ct. 1769, 1770 (1995); *Batson*, 476 U.S. at 96-98, 106 S. Ct. at 1723-24. If the defendant satisfies this initial burden, the burden then shifts to the prosecutor to articulate a race-neutral explanation for excluding the venire member in question. *Purkett*, 514 U.S. at 767, 115 S. Ct. at 1770; *Batson*, 476 U.S. at 97, 106 S. Ct. at 1723. Third, the trial court must determine whether the defendant has met his burden of proving purposeful discrimination. *Hernandez v. New York*, 500 U.S. 352, 359, 111 S. Ct. 1859, 1866 (1993); *Batson*, 476 U.S. at 98, 106 S. Ct. at 1724. In making its determination of whether use of a peremptory challenge was discriminatory, the trial court must articulate specific reasons for each of its factual findings. *Woodson*, 916 S.W.2d at 906. The trial court's findings are imperative for rarely will a trial record alone provide a legitimate basis from which to substitute an appellate court's opinion for that of the trial court. Thus, on appeal, the trial court's finding that the State excused a venire member for race-neutral reasons will not be reversed unless it is clearly erroneous. *Id.* (citation omitted).

In the present case, the trial court found that:

I think there has been – according to what's been stated, its shows a neutral basis for the challenges. And I don't show that there's been any purposeful discrimination, any showing of that – a prima facie showing of that, in accordance with the Batson case.

And there's been reasons for each of the individuals being excluded. We've stated those reasons. Those reasons have been stated on the record. I think they're legitimate reasons.

So, my findings will be that there has not been a prima facie showing of discrimination. I'm not going to exclude, number six, Ms. Tracy Price. I'll call her back to the jury.

From this portion of the record, it could be concluded that the trial court found that the Appellant had not made a *prima facie* showing of discrimination in accordance with the first prong of the *Batson* analysis. However, the court would not have required the State's race neutral explanation for the challenges had no *prima facie* showing been made. *Id.* at 905. Thus, we assume that the court implicitly found that the Appellant had satisfied the first prong of *Batson* and then proceeded with an analysis of the second and third prongs of *Batson*. Moreover, although the trial court's findings are relatively sparse, we find the record sufficient from which to undertake our review.

"In reviewing the prosecutor's explanations, we acknowledge that 'many of the judgments made by counsel in picking a jury are purely intuitive and based upon inarticulable factors.'" *State v. Carroll*, 34 S.W.3d 317, 320 (Tenn. Crim. App.), *perm. to appeal denied*, (Tenn. 2000) (quoting *United States v. Bentley-Smith*, 2 F.3d 1368, 1374 (5th Cir. 1993)). Accordingly, while subjective considerations may not be susceptible to objective rebuttal or verification, they are permitted because of the inherent nature of peremptory challenges, with the understanding that ultimate *Batson* findings will largely turn on the evaluation of the credibility of counsel's explanations. *Id.* (citing *Bentley-Smith*, 2 F.3d at 1374). Notwithstanding, neutral explanations that are based on subjective assessments, such as the juror's demeanor, must be carefully scrutinized. *Id.* (citing *United States v. Jenkins*, 52 F.3d 743, 746 (8th Cir. 1995); *United States v. Sherrills*, 929 F.2d 393, 395 (8th Cir. 1991)). At this step, the crucial inquiry is the facial validity of the prosecutor's explanation. *Hernandez*, 500 U.S. at 360, 111 S. Ct. at 1866. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral. *Id.* Indeed, what *Batson* means by a "legitimate reason" is not a reason that makes sense, but a reason that does not deny equal protection. *Purkett*, 514 U.S. at 769, 115 S. Ct. at 1771 (citations omitted).

With these considerations, we conclude that the basis for the State's use of its peremptory challenges against the four African-American jurors, ultimately excluded from the venire, was sufficiently race-neutral to dispel any indicia of purposeful discrimination. The State provided the court with several race-neutral explanations for the exercise of the peremptory challenges. With regard to Alma Brown, she was challenged because "[h]er nephew was convicted of murder twelve years ago." The reason given for challenging Teresa Hyman was "her husband was killed by the police – her ex-husband was killed by the police twelve years ago." Lester Harmon was excused because he "indicated that he knew something, or he heard something in the media about the case. He couldn't remember exactly what it was. The State [was] concerned about whether or not he [knew] something, whether that information may [have been] used against the State." Regarding Francine Sledge, the State explained that she was removed from the venire because "[s]he's worked in rehabilitation, drug and alcohol situations, with teenagers. And I'm concerned about that there may be sympathy for Mr. Scott, because of his age." The State articulated valid, race-neutral reasons for each of the jurors that it challenged. The trial court then found that the reasons were legitimate

-4-

and non-discriminatory.  We find that the trial court's decision was not clearly erroneous.  This issue is without merit.

The Appellant also contends the reseating of Juror Price was improper, in that the trial court should have dismissed the entire panel, and a new jury should have been selected from a panel not previously associated with the case.  Although leaving the task of prescribing the appropriate remedy for the unconstitutional exercise of a peremptory strike to the states, the Supreme Court identified two possible remedies: reseating persons improperly struck and discharging the entire venire.  *Batson*, 476 U.S. at 99 n. 24, 106 S. Ct. at 1725 n. 24.  In *Woodson*, 916 S.W.2d at 906-07, our supreme court determined that the selection of an appropriate remedy is best left to the discretion of the trial court.  For guidance the court proposed two alternative remedies, *i.e.,* the court may exclude the entire venire and begin selection with a new panel or the juror should be reseated.  *Id*. at 907; *see also State v. James E. Hathaway*, No. 02C01-9702-CR-00082 (Tenn. Crim. App. at Jackson, Dec. 30, 1997) (citing *Jefferson v. State*, 595 So. 2d 38, 41 (Fla. 1992); *Commonwealth v. Fruchtman*, 633 N.E.2d 369, 373 (Mass.), *cert. denied*, 513 U.S. 951, 115 S. Ct. 366 (1994); *Jones v. State*, 683 A.2d 520, 529 (Md. 1996); *Ezell v. State*, 909 P.2d 68, 72 (Okla. Crim. App. 1995); *State ex rel. Curry v. Bowman*, 885 S.W.2d 421, 425 (Tex. Crim. App.), *cert. denied*, 513 U.S. 866, 115 S. Ct. 184 (1994); *Coleman v. Hogan*, 486 S.E.2d 548, 550 (Va. 1997)).  In the present case, the trial court chose the latter method of recourse.  We find this method of reparation quite appropriate.  The *Batson* inquiry was conducted outside the presence of Juror Price and the other potential jurors and without their knowledge as to the nature of the proceedings.  Furthermore, reseating her allowed an African-American to remain on the jury.  Accordingly, we find no error by the court's reseating of Juror Price.

### CONCLUSION

For the foregoing reasons, we affirm the judgments of conviction for the offenses of aggravated robbery, two counts of especially aggravated robbery, and two counts of first degree murder.

_____
DAVID G. HAYES, JUDGE